**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARETH PITTS,
　　　　　*Plaintiff-Appellant,*

v.

TERRIBLE HERBST, INC.,
　　　　　*Defendant-Appellee.*

No. 10-15965

D.C. No.
2:09-cv-00940-
RCJ-RJJ

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
June 15, 2011—San Francisco, California

Filed August 9, 2011

Before: Ferdinand F. Fernandez and Jay S. Bybee,
Circuit Judges, and James K. Singleton,
Senior District Judge.*

Opinion by Judge Bybee

*The Honorable James K. Singleton, Senior District Judge for the U.S. District Court for Alaska, Anchorage, sitting by designation.

**COUNSEL**

Leon Greenberg, Leon Greenberg Professional Corporation, Las Vegas, Nevada, for the plaintiff-appellant.

Patrick H. Hicks, Wendy M. Krincek, and Wesley C. Shelton (argued), Littler Mendelson, P.C., Las Vegas, Nevada, for the defendant-appellee.

---

**OPINION**

BYBEE, Circuit Judge:

We must decide, inter alia, whether a rejected offer of judgment for the full amount of a putative class representative's individual claim moots a class action complaint where the offer precedes the filing of a motion for class certification. We hold that it does not.

I

In April 2009, Gareth Pitts filed a class action complaint in Nevada state court against his employer, Terrible Herbst, Inc. ("Terrible"). The complaint alleged that Terrible failed to pay Pitts and other similarly-situated employees overtime and minimum wages and listed three causes of action: (1) a collective action under 29 U.S.C. § 216(b) for violations of the Fair Labor Standards Act ("FLSA") (Count 1); (2) a class action for violations of Nevada labor laws (Count 2); and (3) a class action for breach of contract (Count 3). Terrible removed the case to federal court in May 2009.

In July 2009, the district court entered a scheduling order that called for all discovery to be concluded by January 2010. That same day, Pitts served Terrible with a request for production of documents, including "a list of the names and addresses of all of [its] employees who work or have worked in [its] retail locations . . . on an hourly . . . basis" and "[a]ll other records . . . that show . . . the hours worked by, [and] the wages paid to" these employees. After Terrible refused to comply with his discovery request, Pitts filed a motion to

compel discovery. This motion, filed in October 2009, argued that "production of time records for all members of the putative class is highly relevant to whether class certification should be granted."

In December 2009, a magistrate judge held a hearing on Pitts's motion to compel and indicated that he would rule on it after the end of the year. In January 2010, without a ruling and facing an impending discovery deadline, Pitts filed a motion to extend the discovery schedule, in which he again argued that "a properly developed record can[not] be presented to the Court on the class certification issue without all or some of [the requested] discovery." In February 2010, the magistrate judge granted the motion and extended discovery until April 2010. The motion to compel remained unresolved.

In the meantime, Terrible made Pitts an offer of judgement pursuant to Federal Rule of Civil Procedure 68. Under the terms of this offer, which was dated October 26, 2009, Terrible agreed "to allow judgment to be taken against it in the total amount of $900.00, plus costs and a reasonable attorney's fee." Although Pitts claimed only $88.00 in damages for himself, he refused Terrible's offer.

Because Terrible's offer fully compensated Pitts for his individual monetary claim, Terrible filed a motion to dismiss the action for lack of subject matter jurisdiction. Specifically, Terrible argued that its offer of judgment rendered the entire case moot. Following the Fifth Circuit's decision in *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008), the district court, in March 2010, held that a Rule 68 offer of judgment does not moot a putative class action so long as the class representative can still file a timely motion for class certification. Nevertheless, the district court then held that Terrible's offer mooted the action because Pitts failed to timely seek class certification. The district court acknowledged that the magistrate judge had extended discovery until April 2010 and that he had not yet ruled on the motion to compel discovery.

But the court nevertheless concluded that Pitts "pushed beyond the limits of timeliness in waiting for certification" and that Pitts's "failure to move for class certification before the initial deadline for discovery demonstrates untimeliness on his part." The court then dismissed the entire action with prejudice for lack of subject matter jurisdiction, entered judgment in the defendant's favor, and ordered Terrible to pay $900 to Pitts and $3,500 to Pitts's attorney.

In the same order that dismissed Counts 1 and 2 of the complaint for lack of subject matter jurisdiction (as we explain below, Count 3 had already been dismissed) the district court also dismissed Count 2 on alternative grounds. Specifically, the court concluded that a Federal Rule of Civil Procedure 23 class action alleging violations of state labor laws is incompatible with a collective action under the FLSA and held that when both actions are brought together, only the FLSA action may proceed. In its ruling, the district court acknowledged that Pitts sought to abandon his FLSA claims and pursue only his Rule 23 class action, but refused to allow him to do so. The court explained that Pitts failed to amend his complaint to reflect that he was waiving his FLSA claims and accused Pitts of forum shopping: "[S]o long as there is no FLSA claim, the jurisdictional anchor to this removed action is lost. It is then in the discretion of the Court under [28 U.S.C.] § 1367 whether it is appropriate to retain the ancillary jurisdiction it properly has over Plaintiff's state law claims, despite the fact that the federal claims are no longer in the suit."

In prior orders, the district court also dismissed Count 3 of Pitts's complaint for two separate reasons. First, the district court concluded that Count 3 lacked definiteness because it failed to specify the hourly wage provided for by Pitts's alleged employment contract. However, because Pitts agreed to amend his complaint to specify the contractual hourly rate, the district court granted Pitts 15 days to amend. But Pitts never had a chance to do so because before the expiration of

the 15 days, the district court dismissed Count 3 again, this time with prejudice. Specifically, the court construed the breach of contract claim as a claim for violation of Nevada Revised Statutes § 608.100 and dismissed it because only the Nevada Labor Commissioner may enforce this statute.

## II

Pitts has timely appealed all dispositive rulings of the district court. This appeal raises five issues: (1) whether a rejected Rule 68 offer of judgment made before the filing of a motion for class certification moots a putative class representative's class action complaint; (2) whether Pitts was untimely in seeking class certification; (3) whether FLSA collective actions are incompatible with related Rule 23 state law class actions; (4) whether Nev. Rev. Stat. § 608.100 abrogates Nevada's common law breach of contract action; and (5) whether Pitts pled his breach of contract claim with sufficient specificity. We address each issue in turn.[1]

## A

**[1]** We first address whether a Rule 68 offer of judgment for the full amount of a putative class representative's individual monetary claim moots that representative's class action complaint. We agree with the district court that the class action is not moot.

---

[1]We review the district court's determination of the timeliness of a motion for class certification for abuse of discretion. *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986); *cf. Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997) ("We review for abuse of discretion the district court's determination that the motion to intervene was untimely." (citation omitted)). All other issues present questions of law, which we review de novo. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010).

1

**[2]** Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987). Whether "the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In other words, if events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot, *see Stratman v. Leisnoi, Inc.*, 545 F.3d 1161, 1167 (9th Cir. 2008); *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174 (9th Cir. 2005), because "[w]e do not have the constitutional authority to decide moot cases," *Foster v. Carson*, 347 F.3d 742, 747 (9th Cir. 2003) (citation and internal quotation marks omitted).

**[3]** Although the Supreme Court has described mootness as a constitutional impediment to the exercise of Article III jurisdiction, the Court has applied the doctrine flexibly, particularly where the issues remain alive, even if "the plaintiff's personal stake in the outcome has become moot." Matthew I. Hall, *The Partially Prudential Doctrine of Mootness*, 77 Geo. Wash. L. Rev. 562, 622 (2009). The distinction between issues that have become moot and parties whose interest in the issue may have become moot is especially visible in the context of class actions. For example, in *Sosna v. Iowa*, 419 U.S. 393 (1975), the Court considered whether an entire class action becomes moot when the class representative loses her personal stake in the outcome of the litigation after the district court certifies a class. There, the appellant filed a class action

complaint challenging the constitutionality of Iowa's one-year durational residency requirement for invoking the state's divorce court jurisdiction. *Id.* at 396-97. After the district court certified a class and ruled against the appellant on the merits, the appellant sought Supreme Court review. *Id.* But while the case was pending before the Court, the appellant had both obtained a divorce in another state and resided in Iowa for more than one year. *Id.* at 398-99.

The Court explained that had the appellant sued only on her own behalf, "both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal." *Id.* at 399. However, the Court held that the case was not moot because by the time the appellant lost her personal stake in the outcome of the litigation, the district court had already certified a class. Class certification "significantly affect[ed] the mootness determination" because "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Id.* Accordingly, an Article III case or controversy existed at the time of the Court's review between "a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff ha[d] become moot." *Id.* at 402; *see also id.* at 401 ("Although the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.").

The Court in *Sosna* anticipated the possibility that a case might become moot with respect to the named plaintiffs before the district court could rule on class certification. In such a case, "whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 402 n.11.

The Court addressed the mootness of actions that might otherwise evade review in *Gerstein v. Pugh*, 420 U.S. 103 (1975). In *Gerstein*, the named plaintiffs challenged the constitutionality of certain state pretrial detention procedures. However, by the time the case reached the Supreme Court, the named plaintiffs had been convicted and, therefore, their pretrial detention had ended. *Id.* at 110 n.11. Nevertheless, the Court held that "[t]his case belongs . . . to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Id.* Because the time of pretrial custody was short, it was "most unlikely" that any named plaintiff or potential class representative "would be in pretrial custody long enough for a district judge to certify the class." *Id.* Accordingly, the named plaintiff's substantive claim was one "distinctly 'capable of repetition yet evading review' " and, therefore, not moot. *Id.*

The Court extended *Sosna* in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), and *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), where it held that a putative class representative may appeal the district court's denial of class certification even after his individual claim becomes moot. In *Roper*, the named plaintiffs filed a class action complaint in which they alleged that the defendant charged them usurious finance fees in violation of federal law. 445 U.S. at 328. After the district court denied class certification, the defendant "tendered to each named plaintiff . . . the maximum amount that each could have recovered." *Id.* at 329. Although the named plaintiffs declined to accept the tender, the district court entered judgment in their favor, over their objection and in accordance with the defendant's offer. *Id.* at 329-30. After the Fifth Circuit reversed the denial of class certification, the Supreme Court granted certiorari to decide "whether a tender to named plaintiffs in a class action of the amounts claimed in their individual capacities, followed by the entry of judgment in their favor on the basis of that tender, over their objection, moots the case and termi-

nates their right to appeal the denial of class certification." *Id.* at 327.

At the outset, the Court noted it was "important" that, as here, "[a]t no time did the named plaintiffs accept the tender in settlement of the case; instead, judgment was entered in their favor by the court without their consent and the case was dismissed over their continued objections." *Id.* at 332. The Court then held that the case was not moot because the named plaintiffs retained "an economic interest in class certification," *id.* at 333, including "their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails," *id.* at 336. Moreover, the Court expressed concern at the ability of defendants to " 'buy off' " proposed class representatives before a court can certify a class, thereby "frustrat[ing] the objectives of class actions." *Id.* at 339.[2]

In *Geraghty*, the Court extended *Roper* even to cases where the named plaintiff lacks any economic interest in the class certification decision. There, a federal prisoner brought a class

---

[2]Concurring, Justices Rehnquist and Stevens offered additional reasons why a settlement offer does not moot a class action complaint. Justice Rehnquist explained that a class action "is moot in the Art. III sense only if th[e] Court adopts a rule that an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims." *Roper*, 445 U.S. at 341 (Rehnquist, J., concurring). But so long as the Court does not adopt such a rule, "the requisite Art. III adversity continues" because "the defendant has not offered all that has been requested in the complaint (*i.e.*, relief for the class) and any other rule would give the defendant the practical power to make the denial of class certification questions unreviewable." *Id.* Justice Stevens argued that "when a proper class-action complaint is filed, the absent members of the class should be considered parties to the case or controversy at least for the limited purpose of the court's Art. III jurisdiction." *Id.* at 342 (Stevens, J., concurring). Accordingly, "the continued viability of the case or controversy, as those words are used in Art. III, does not depend on the district judge's initial answer to the certification question; rather, it depends on the plaintiffs' right to have a class certified." *Id.*

action challenging the constitutionality of certain parole release guidelines and sought to certify "a class of all federal prisoners who are or will become eligible for release on parole." 445 U.S. at 393 (internal quotation marks omitted). After the district court denied class certification and ruled against the named plaintiff on the merits, the named plaintiff appealed. *Id.* at 393-94. But while the appeal was pending, Geraghty completed his sentence and was released from prison, an event that rendered his individual claim moot. *Id.* at 394. The Court noted that if the class had been certified, Geraghty's release would not have mooted the controversy. *Id.* The question was whether Geraghty's release also mooted his appeal of the class certification ruling. The Court held that it did not.

**[4]** The Court observed that "[a] plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." *Id.* at 402. Discussing the latter claim, the Court explained that "the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified if the requirements of the Rules are met." *Id.* at 403. This procedural right to represent a class "is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement," but it nevertheless suffices to satisfy Article III concerns because the class certification question "remains as a concrete, sharply presented issue" even after the named plaintiff's individual claim has expired and because "vigorous advocacy [of the plaintiff's right to have a class certified] can be assured through means other than the traditional requirement of a 'personal stake in the outcome.' " *Id.* at 403-04. Accordingly, the Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied," *id.* at 404, and if denial of class certification is reversed on appeal, "the

corrected ruling 'relates back' to the date of the original denial," *id.* at 404 n.11.

Finally, in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the plaintiffs brought a class action to challenge the County's policy of combining probable cause determinations with its arraignment procedures. The Court noted that the plaintiffs—persons incarcerated who at the time the complaint was filed had not received a probable cause determination— no longer had live individual claims because they had either received a probable cause determination or been released. *Id.* at 51. Citing *Gerstein* and *Sosna*, the Court repeated that the termination of a class representative's claim does not moot the class claims. *Id.* As the Court explained, "[t]hat the class was not certified until after the named plaintiffs' claims had become moot does not deprive [the Court] of jurisdiction." *Id.* at 52. Where the claims are "inherently transitory" "the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *Id.* (citation omitted).

2

Though *Sosna*, *Gerstein*, *Roper*, *Geraghty*, and *McLaughlin* do not address the precise issue before us—whether a putative class action becomes moot when the named plaintiff receives an offer of settlement that fully satisfies his individual claim *before* he files a motion for class certification—they provide several principles that guide our decision.

**[5]** First, if the district court has certified a class, mooting the putative class representative's claim will not moot the class action. That is so because upon certification the class "acquire[s] a legal status separate from the interest asserted by [the class representative]," *Sosna*, 419 U.S. at 399, so that an Article III controversy now exists "between a named defendant and a member of the [certified] class," *id.* at 402. At this point, a defendant may moot a class action through an offer of settlement only if he satisfies the demands of the class; an

offer to one cannot moot the action because it is not an offer to all.

**[6]** Second, if the district court has denied class certification, mooting the putative class representative's claim will not necessarily moot the class action. The putative class representative retains an interest in obtaining a final decision on class certification that allows him to litigate the denial of class certification on appeal. *See Geraghty*, 445 U.S. at 404; *Roper*, 445 U.S. at 336-37. This interest may be either an individual economic interest in "shift[ing] part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails," *Roper*, 445 U.S. at 336, or a private-attorney-general-like interest in having a class certified if the requirements of Rule 23 are met, *Geraghty*, 445 U.S. at 403, but it nevertheless satisfies Article III concerns. "If the appeal results in reversal of the class certification denial, and a class subsequently is properly certified, the merits of the class claim then may be adjudicated pursuant to the holding in *Sosna*." *Id.* at 404.

**[7]** Third, even if the district court has not yet addressed the class certification issue, mooting the putative class representative's claims will not necessarily moot the class action. "[S]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *McLaughlin*, 500 U.S. at 52 (internal quotation marks omitted). An inherently transitory claim will certainly repeat as to the class, either because "[t]he individual could nonetheless suffer repeated [harm]" or because "it is certain that other persons similarly situated" will have the same complaint. *Gerstein*, 420 U.S. at 110 n.11. In such cases, the named plaintiff's claim is "capable of repetition, yet evading review," *id.*, and "the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution," *McLaughlin,* 500 U.S. at 52; *see also Geraghty*, 445 U.S. at 398; *Sosna*, 419 U.S. at 402 n.11. Application of the

relation back doctrine in this context thus avoids the spectre of plaintiffs filing lawsuit after lawsuit, only to see their claims mooted before they can be resolved.

3

**[8]** Applying these principles to our case, we conclude that Terrible's unaccepted offer of judgment did not moot Pitts's case because his claim is transitory in nature and may otherwise evade review. Accordingly, if the district court were to certify a class, certification would relate back to the filing of the complaint. We recognize that the canonical relation-back case—such as *Gerstein* or *McLaughlin*—involves an "inherently transitory" claim and, correspondingly, "a constantly changing putative class." *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997). But we see no reason to restrict application of the relation-back doctrine only to cases involving *inherently* transitory claims. Where, as here, a defendant seeks to "buy off" the small individual claims of the named plaintiffs, the analogous claims of the class—though not *inherently* transitory—become no less transitory than inherently transitory claims. Thus, although Pitts's claims "are not 'inherently transitory' as a result of being time sensitive, they are 'acutely susceptible to mootness' in light of [the defendant's] tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action." *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004) (internal citation omitted). The end result is the same: a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review.

Invoking the relation back doctrine in this context furthers the purposes of Rule 23. Where the class claims are so economically insignificant that no single plaintiff can afford to maintain the lawsuit on his own, Rule 23 affords the plaintiffs a "realistic day in court" by allowing them to pool their claims. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see also Roper*, 445 U.S. at 339 ("Where it is not eco-

nomically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). A rule allowing a class action to become moot "simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs" before the named plaintiffs have a chance to file a motion for class certification would thus contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims. *Roper*, 445 U.S. at 339; *see also Weiss*, 385 F.3d at 344 ("[A]llowing the defendants here to 'pick off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims . . . ."). It would effectively ensure that claims that are too economically insignificant to be brought on their own would never have their day in court. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981) ("[I]n those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage."); *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008) ("[T]reating pre-certification settlement offers as mooting the named plaintiffs' claims would have the disastrous effect of enabling defendants 'to essentially opt-out of Rule 23.'" (citation omitted)). And even if it does not discourage potential claimants, it "may waste judicial resources by 'stimulating successive suits brought by others claiming aggrievement.'" *Weiss*, 385 F.3d at 345 (quoting *Roper*, 445 U.S. at 339).

**[9]** Accordingly, we hold that an unaccepted Rule 68 offer of judgment—for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification—does not moot a class action.[3]

---

[3]In so holding, we join the three other circuits that have considered the pre-certification effect of a Rule 68 offer of judgment on the mootness of

If the named plaintiff can still file a timely motion for class certification, the named plaintiff may continue to represent the class until the district court decides the class certification issue. Then, if the district court certifies the class, certification relates back to the filing of the complaint. Once the class has been certified, the case may continue despite full satisfaction of the named plaintiff's individual claim because an offer of judgment to the named plaintiff fails to satisfy the demands of the class. *See Sosna*, 419 U.S. at 402-03. Conversely, if the district court denies class certification, under *Roper* and *Geraghty*, the plaintiff may still pursue a limited appeal of the class certification issue. Only once the denial of class certification is final does the defendant's offer—if still available—moot the merits of the case because the plaintiff has been offered all that he can possibly recover through litigation. *See Sandoz*, 553 F.3d at 921 & n.5. We agree with the district court that Terrible's offer of judgment to Pitts did not moot his class action.

## B

**[10]** We next address whether the district court abused its discretion in finding that Pitts could no longer file a timely motion for class certification. "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with 'a definite and firm conviction that the district court committed a clear error of judgment.' " *United States v. Hink-*

<hr>

a class action. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir. 2011) (holding that "a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008) (holding that a timely filed motion for class certification relates back to the filing of the complaint so that a pre-certification Rule 68 offer of judgment does not moot the case); *Weiss*, 385 F.3d at 348 (same).

*son*, 611 F.3d 1098, 1114 (9th Cir. 2010) (citation omitted). Here, the district court held that Pitts was untimely in seeking class certification because he failed to file his motion to certify prior to the initial discovery deadline. With respect, we think the district court committed a clear error of judgment.

We acknowledge that Pitts did not file a motion for class certification by January 2010, the initial discovery deadline. But at the time of the district court's ruling, Pitts had already asked for and received an extension of this deadline until April 2010. Pitts had a good reason for doing so: by January 2010, the court had not yet ruled on his motion to compel the production of certain documents that, in his view, were crucial to the class certification decision.[4] Pitts repeatedly and timely informed the court—in his motion to compel, at the hearing held for this motion, and in his motion to extend the initial discovery deadline—that he was awaiting the court's ruling prior to filing a motion for class certification.[5] The court, however, never ruled on the motion to compel. Had the

_____

[4]Terrible argues that Pitts was untimely in seeking class certification because he waited nearly 9 months to depose "the person most knowledgeable at [Terrible] regarding the company's policy and practice for approving employee overtime." We disagree. At the time Pitts conducted this deposition, his motion to compel was still pending before the district court. We fail to see how Pitts was untimely in seeking class certification because he awaited the resolution of a discovery motion which, if granted, would have allowed him to conduct a more meaningful deposition of a critical witness.

[5]It was certainly reasonable for Pitts to await a ruling on his motion to compel the production of documents allegedly crucial to class certification before filing a motion to certify a class. We have previously held that "[t]he propriety of a class action cannot be determined in some cases without discovery" and that "[t]o deny discovery in [such cases] would be an abuse of discretion." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (stating that "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable" and that such an opportunity requires "enough discovery to obtain the material").

court ruled on Pitts's motion—which was filed well before the initial discovery deadline—or had the court simply informed Pitts that he was nevertheless expected to file a motion for class certification by January 2010, Pitts could then have filed his motion for class certification in a "timely" manner. But the court did not do so.

**[11]** Without a clear statement from the district court setting a deadline for the filing of a motion for class certification, Pitts could not predict that he was expected to file his motion by the end of the initial discovery deadline. Unlike the local rules of some district courts, the local rules of the District of Nevada do not impose a particular deadline for filing a motion for class certification. Nor did the scheduling order entered by the district court refer to any deadline for filing such a motion. In fact, the scheduling order contemplated that a class certification motion could be filed even after the initial discovery deadline; it states that "[d]ispositive motions shall be filed no later [than] 60 days after the end of discovery *unless a motion for class action certification is made . . . during such time*." The only other guideline Pitts had for determining when he was expected to seek class certification was Rule 23 itself, which states that *the district court* must decide the class certification issue "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Under these circumstances—where the court had extended the initial discovery deadline at the time of its ruling, where a motion to compel the production of documents allegedly crucial to the class certification decision had been filed well in advance of the initial discovery deadline and was still pending, where neither the local rules nor the court's own scheduling order imposed a deadline for seeking class certification, and where the scheduling order actually suggested that a motion for class certification could be filed even after the end of discovery—the district court abused its discretion in finding that Pitts could no longer file a timely motion to certify a class.

## C

Aside from dismissing Pitts's entire action for lack of subject matter jurisdiction, the district court alternatively dismissed Count 2 of the complaint because, in its view, a Rule 23 class action could not co-exist with a related collective action under the FLSA. Although the question has divided district courts in our circuit, *compare Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 994 (C.D. Cal. 2008) (holding that "an opt-out class under Rule 23 is not inherently incompatible with an FLSA opt-in class"), *with Williams v. Trendwest Resorts, Inc.*, 2007 WL 2429149, at *4 (D. Nev. Aug. 20, 2007) (holding that "the class action mechanisms of the FLSA and Rule 23 are incompatible"), we need not address this issue because Pitts has told us—as he told the district court—that he will not pursue his FLSA claims.[6] Because Pitts has abandoned these claims, any alleged incompatibility between a Rule 23 class action and an FLSA collective action is not present in this case.

The district court faulted Pitts for failing to amend his complaint to reflect his waiver of the federal claims and for trying to oust the court of jurisdiction. Neither reason justifies the district court's refusal to allow Pitts to relinquish his FLSA claims. First, a litigant may abandon a claim by communicating his desire to do so to the district court. Pitts did so in a written response to a motion to dismiss; he did not need to further amend his complaint. Second, a plaintiff may voluntarily abandon a claim even though his decision may affect the jurisdiction of a federal court; after all, the claim he abandons—once dismissed with prejudice—is the price he pays. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (stating that the concern "that a plaintiff whose suit has been removed to federal court will be able to regain a state

---

[6]The only circuit that has addressed this issue has held that Rule 23 class actions and FLSA collective actions may peacefully co-exist. *See Ervin v. OS Rest. Servs.*, 632 F.3d 971, 976-79 (7th Cir. 2011).

forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case . . . hardly justifies a categorical prohibition on the remand of cases involving state-law claims"); *cf. Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1275-76 (5th Cir. 1990) (holding that the district court did not abuse its discretion in granting the plaintiff's motion for voluntary dismissal where, after dismissal, the defendant faced the prospect of a trial in state court). And in any event, the district court retains discretion under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over state law claims even after the federal claims, which provided the original jurisdictional anchor, are dismissed. *See Cohill*, 484 U.S. at 357 (holding that a district court may take the plaintiff's forum manipulation into account when determining whether to remand a case involving pendent state-law claims); *cf. Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) ("The fact that [the plaintiff] may have later sought dismissal of his federal claims does not divest the district court of its power to exercise supplemental jurisdiction unless those claims were absolutely devoid of merit or obviously frivolous.").

## D

We next turn to the district court's reasons for dismissing Count 3 of the complaint.

**[12]** Although Count 3 alleged a common law cause of action for breach of contract, the district court recast Count 3 as a statutory claim alleging a violation of Nev. Rev. Stat. § 608.100. Then, because Nevada courts have held that § 608.100 does not provide a private cause of action, the district court dismissed Count 3. A district court may not substitute a claim that is easy to dismiss for a claim actually asserted in the complaint and then dismiss the original claim unless the substitute claim somehow preempts the original claim. Because § 608.100 does not abrogate Nevada's com-

mon law breach of contract action, we reverse the district court.

**[13]** Nevada courts will not construe a statute as eliminating a common law cause of action unless the statute unambiguously requires that result. *See Hardy Cos., Inc. v. SNMARK, LLC*, 245 P.3d 1149, 1155-56 (Nev. 2010) ("In the enactment of a statute, 'the legislature will be presumed not to intend to overturn long-established principles of law, and the statute will be so construed unless an intention to do so plainly appears by express declaration or necessary implication.' " (citations omitted)); *cf. United States v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." (citations omitted)). Section 608.100 provides, in relevant part, that "[i]t is unlawful for any employer to . . . [p]ay a lower wage . . . to an employee than the amount that the employer is required to pay . . . by contract between the employer and the employee." Nev. Rev. Stat. § 608.100(1)(b). Although it is true that only the Nevada Labor Commissioner may enforce this provision, *see Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100-03 (Nev. 2008), nothing in § 608.100's text expresses the legislature's desire to eliminate a common law breach of contract action covering the same conduct; in fact, § 608.100 does not even mention the common law or a breach of contract action. Moreover, a violation of § 608.100 imposes liability of a kind that cannot be imposed by a breach of contract action, which suggests that § 608.100 was meant to complement rather than replace the common law. *See* Nev. Rev. Stat. § 608.195 (stating that any person who violates Nev. Rev. Stat. § 608.100 "is guilty of a misdemeanor" and that "the Labor Commissioner may impose . . . an administrative penalty of not more than $5,000 for each such violation").

Nevertheless, Terrible argues that *Sands Regent v. Valgardson*, 777 P.2d 898 (Nev. 1989), compels a different result. Terrible cites the case for the proposition that whenever the

legislature enacts a statute that imposes liability for conduct that already rendered the actor liable under a common law cause of action, the legislature necessarily displaces the existing cause of action. But Terrible has misread *Valgardson*. In *Valgardson*, the plaintiffs sued their employer after they were fired for being too old and alleged, among other things, a cause of action for violation of a Nevada statute that prohibited discrimination in employment on the basis of age and a cause of action for common law public policy tortious discharge. *Id.* at 898-99. In part because Nevada's unlawful employment practices statute already created a private cause of action for firing an employee because of his age, the court refused to extend the common law public policy tortious discharge cause of action to cover instances of age discrimination. *Id.* at 900. Accordingly, *Valgardson* held that Nevada will not *create* a new common law cause of action where the legislature has already provided a statutory remedy covering the same wrongful conduct; *Valgardson* nowhere held that a statute that imposes liability for conduct that renders the actor liable under an existing cause of action *abrogates* the existing cause of action.[7]

E

Lastly, we address the district court's dismissal of Count 3 of the complaint for lack of definiteness.

Before the district court dismissed Count 3 on the merits, it dismissed Count 3 because Pitts failed to specify in his complaint the hourly wage he was entitled to under his alleged employment contract with Terrible. However, after Pitts offered to amend his complaint to make this specific allegation, the court gave Pitts 15 days to amend. But the court then denied Pitts an opportunity to amend by dismissing

---

[7]This is not to say that an employee can seek to enforce statutory provisions by framing them as implied contract terms. *See Baldonado*, 194 P.3d at 104 n.33.

Count 3 with prejudice before the expiration of the 15 days. Now that we have reversed the district court's latter dismissal, we presume that Pitts will amend his complaint. Accordingly, we need not address the district court's pleading specificity holding.

## III

We hold that where a defendant makes an unaccepted Rule 68 offer of judgment that fully satisfies a named plaintiff's individual claim before the named plaintiff files a motion for class certification, the offer does not moot the case so long as the named plaintiff may still file a timely motion for class certification. Once filed, a timely motion for class certification relates back to the time of the filing of the complaint. We further hold that the district court abused its discretion in finding that Pitts could no longer file a timely motion of class certification; that it erred in refusing to allow Pitts to abandon his FLSA claims; and that it erred in holding that Nev. Rev. Stat. § 608.100 abrogates Pitts's breach of contract claims.

REVERSED and REMANDED.