# United States Court of Appeals
# for the Federal Circuit

---

**TAYLOR RUSSELL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-1498

---

Appeal from the United States District Court for the Northern District of California in Case No. 09-CV-3239, Judge William H. Alsup.

---

**TAYLOR RUSSELL, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-1230

---

Appeal from the United States District Court for the Northern District of California in Case No. 09-CV-3239, Judge William H. Alsup.

————————————————

Decided: December 1, 2011

————————————————

S. CHANDLER VISHER, Law Office of S. Chandler Visher, of San Francisco, California, argued for plaintiff-appellant. Of counsel on the brief was MARIE NOEL APPEL, Consumer Law Office of Marie Noel Appel, of San Francisco, California.

ALICIA M. HUNT, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, J. CHRISTOPHER KOHN, Director, RUTH A. HARVEY, Assistant Director, and MICHAEL J. QUINN, Trial Attorney.

————————————————

Before LOURIE, BRYSON, and REYNA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Taylor Russell filed a class action complaint against the United States seeking relief for himself and a class of similarly situated persons regarding interest charges that the government had assessed against him and the other putative class members on military credit accounts. Prior to ruling on Mr. Russell's motion for class certification, the district court dismissed his individual action as moot on the ground that the government, by issuing a payment to Mr. Russell during the pendency of the lawsuit, had

satisfied his individual claim. Mr. Russell argues on various grounds that the district court erred by dismissing his claim. We vacate the district court's order dismissing the case and remand for further consideration consistent with this opinion.

I

The Army and Air Force Exchange Service ("the Exchange"), an instrumentality of the United States, issues credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores on U.S. military bases. During the period relevant to this case, the credit-card plan under the Exchange's credit program agreement offered two types of purchases: the Uniform Clothing Deferred Payment Plan ("UCDPP") for uniforms and the Deferred Payment Plan ("DPP") for other goods. UCDPP balances were not subject to finance charges, while DPP balances were.

Mr. Russell opened a credit account with the Exchange in 1997. His agreement with the Exchange provided for a variable interest rate of bank prime rate plus 4.75%, with a minimum rate of 12%. In 2000, Mr. Russell became delinquent on the balance of his DPP account. He incurred finance charges associated with that delinquent balance until February 2009.

In July 2009, Mr. Russell filed this action against the government alleging that the Exchange had breached its credit agreement with him and others by charging a rate of interest on delinquent debt that exceeded the rate specified by the credit agreements.[1] After the action was

---

[1] The complaint alleged that improper interest was charged on both UCDPP and DPP balances. The UCDPP

filed, the Exchange conducted an audit and subsequently adjusted the DPP accounts of 46,851 individuals. Mr. Russell's account was among those audited and adjusted. The audit revealed that refunds were due to approximately 33,902 customers who had DPP accounts, including Mr. Russell.

In May 2010, the Exchange conducted a second audit that was designed to identify the interest overcharges on a large number of additional accounts. That audit resulted in adjustments to the DPP accounts of an additional 103,320 individuals, of whom 69,198 received refunds.

Meanwhile, on February 11, 2010, the Exchange sent Mr. Russell a refund check in the amount of $149.78 through his litigation counsel. That amount exceeded the $133.66 that Mr. Russell, in his interrogatory responses, had asserted was due to him in connection with his DPP claim. Shortly after sending the check to Mr. Russell, the government moved to dismiss his pending claim as moot. While that motion was pending, Mr. Russell moved to have his action certified as a class action. The district court subsequently dismissed Mr. Russell's individual action as moot. It then denied his motion for class certification without prejudice, noting the possibility that a plaintiff whose account had not been adjusted could intervene and assume the role of lead plaintiff and potential class representative. The court also noted that Mr. Russell's claim for attorney's fees "remain[ed] alive." On June 22, 2010, because no appropriate plaintiff had intervened in the action and because no motion for attor-

---

claim was dismissed as moot in November 2009. Mr. Russell does not challenge that dismissal on appeal.

ney's fees had been filed, the district court entered final judgment of dismissal.

Mr. Russell then filed an appeal to this court (No. 2010-1498), challenging the dismissal of his action. Subsequently, Mr. Russell filed a motion in the district court pursuant to Fed. R. Civ. P. 60(b). In his motion, he sought relief from the judgment based on his asserted discovery that the Exchange's refund check of $149.78 was insufficient to fully compensate him for the loss attributable to the erroneous calculation of the interest due on his DPP account balance. The district court denied that motion. Mr. Russell then took an appeal to this court (No. 2011-1230) from that order. We have consolidated the two appeals for decision.

## II

With respect to the dismissal order, Mr. Russell argues that the government's proffer of $149.78 did not warrant dismissal of his action for several reasons. First, he contends that the proffer was not sufficient to provide full satisfaction of even his own claim, particularly as it provided no compensation for attorney's fees and costs. Second, he contends that it was improper for the court to hold that his individual action was mooted while his motion to certify the class was pending.

## A

With respect to his individual claim, Mr. Russell contends that the $149.78 refund on his underlying claim was $30.71 too low. In addition, Mr. Russell argues that in order to fully compensate him on his individual claim, the government should have reimbursed him for the $350 filing fee that he paid to file this action, the $228 cost of

the transcript of his deposition, the $88.50 cost of service of process, an expert fee of $1265, and other costs totaling approximately $5000. Finally, he argues that the government's proffer was inadequate to moot his individual case because it did not compensate him for his attorney's fees to which he claims he would have been entitled if he had prevailed at trial.

We find no error in the district court's determination, based on the record before it at the time, that the government's proffer of $149.78 was sufficient to moot his individual claim for relief. That amount was more than Mr. Russell claimed, in his interrogatory responses, that he was owed. While he later claimed, months after the case had been dismissed, that the $149.78 payment was less than he was actually due on his claim, he cannot rely on that belated assertion to challenge the district court's dismissal order unless there is merit to his Rule 60 motion for relief from the judgment, a point that we address below.

We also reject Mr. Russell's argument that his individual claim was not moot because the government failed to compensate him for various expenses, including court costs, litigation expenses, and attorney's fees. The law is clear that when a court seeks to determine whether a plaintiff's claim is moot because the claim has been satisfied, the proper focus is on whether the plaintiff's principal claim has been resolved, not on whether ancillary expenses, such as court costs, sunk litigation costs, and attorney's fees, have been paid or have accrued. As the Supreme Court explained in *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990):

Th[e] interest in attorney's fees is, of course, insufficient to create an Article III case or contro-

versy where none exists on the merits of the underlying claim . . . . Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs.

*See also Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) ("[T]he mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III."); *United States v. Anchor Coal Co.*, 279 U.S. 812, 813 (1929) (proper disposition of a case that has become moot is "to dismiss the bill of complaint without costs, because the controversy involved has become moot and, therefore, is no longer a subject appropriate for judicial action").

Moreover, there is a separate problem with Mr. Russell's assertion that he is entitled to attorney's fees based on the government's tender of the full amount of his claim. The only source that he cites for his claim of entitlement to attorney's fees is the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Fees may be awarded under that statute only to a "prevailing party," however. As the Supreme Court has made clear, a party is not a "prevailing party" under a fee statute such as EAJA if the action at issue is terminated without the issuance of a judicial order granting the relief sought. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *see also Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1377 (Fed. Cir. 2002) (analysis of "prevailing party"

in *Buckhannon* applies to EAJA cases). Accordingly, we agree with the district court that Mr. Russell's individual claim was fully satisfied after the government made a payment to him in the amount of $149.78, which was more than he had claimed was due to him. Mr. Russell attaches some significance to the fact that although his counsel had received the government's check, Mr. Russell had not cashed it. But it is undisputed that the government had tendered a check in that amount to Mr. Russell through his agent; the fact that Mr. Russell may have chosen not to "accept" that payment by cashing the check is not sufficient to prevent his individual claim from becoming moot. *See Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (a plaintiff "may not spurn [an] offer of all the damages he is owed and proceed to trial").

B

The more difficult question is whether, despite the satisfaction of Mr. Russell's individual claim, the claim for classwide relief in his complaint, together with the pendency of his motion for class certification at the time of the district court's dismissal order, were sufficient to require the district court to adjudicate the rights of the putative class members. The question regarding whether and under what circumstances Mr. Russell can continue to represent putative class members even after his personal claim has become moot is a procedural question that is not unique to cases arising under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). We therefore apply the law of the regional circuit—in this case the Ninth Circuit—to that question. *See Chattler v. United States*, 632 F.3d 1324, 1327 (Fed. Cir. 2011) (applying the law of the regional circuit to various procedural issues arising from a claim brought under 28 U.S.C. § 1346(a)(2)).

Mr. Russell argues that the government should not be able to "pick off" class representatives in a putative class action by offering individual relief to the class members rather than relief to the entire putative class. Accordingly, he contends that an offer of relief to a class representative should not result in the dismissal of the putative class action. In this regard, he submits that it does not matter whether class certification has been granted by the time of the offer to the class representative. If class certification has not been granted at that time, the act of certification should relate back to the filing of the class action complaint, and in such a case mootness with respect to an individual claim for relief should not result in dismissal of the class complaint.

At the time of the district court's dismissal order, there was no clear Ninth Circuit precedent regarding the proper disposition of a case in which an offer of settlement is made to a putative class representative that fully satisfies his individual claim before he files a motion for class certification. Quoting *Zeidman v. McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. 1981), the district court noted that other courts have held that when a putative class representative has filed a motion for class certification and has diligently pursued it, "the defendants should not be allowed to prevent consideration of that motion by tendering to the named plaintiffs their personal claims before the district court reasonably can be expected to rule on the issue." The district court distinguished that line of authority, however, on two grounds: first, that Mr. Russell had not filed his motion for class certification at the time the defendant tendered the check to Mr. Russell and filed its motion to dismiss; and second, that the government was not seeking to pay the individual claim of Mr. Russell simply in order to "pick off" the class representative, but instead had adjusted a total of 46,851

accounts "and intends to issue subsequent refunds for approximately 33,902 customers."[2]

While the district court's analysis was not at odds with Ninth Circuit law at the time, a subsequent Ninth Circuit decision has called the court's analysis into question, at least in part. In *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), the Ninth Circuit held that in a putative class action, an unaccepted offer of judgment for the full amount of the named plaintiff's individual claim does not moot the class action even if the offer is made before the named plaintiff files a motion for class certification. That case disposes of one of the two grounds on which the district court relied in its dismissal order to distinguish prior cases—that the offer to the named plaintiff was made prior to the filing of the motion for class certification. The other ground of distinction—that the government expressed its intention to make refund payments to 33,901 other customers in addition to Mr. Russell—is also questionable in light of *Pitts* and in light of the facts available to the district court at the time the case was dismissed.

In particular, it is unclear whether the 46,851 customers whose accounts had been adjusted in February 2010 by the time of the government's motion to dismiss constituted all of the putative class members, or whether the May 2010 audit and adjustment of the additional 103,320 accounts covered the entire class. The government now contends that the May 2010 audit and adjustments are irrelevant to the question whether full relief

---

[2]   It appears that but for an agreement by the government, at Mr. Russell's behest, to delay payment of the refunds until the motions to certify and dismiss were resolved, the rest of the 33,902 refunds likely would have been paid several weeks before the case was dismissed.

has been granted to the prospective class, because in the government's view the previous audit and adjustments in February 2010 satisfied the demands of the entire class, as defined by paragraph 48 of Mr. Russell's complaint. That paragraph appears to limit the class to only those individuals who were charged an interest rate "between 12% and prime plus 4.75% per annum." But it is unclear that paragraph 48 actually defines the class that Mr. Russell sought to represent, because paragraph 37 of his complaint appears to define the class in a way that does not limit membership based on interest rate. In light of the ambiguity of the complaint on that point, it is unclear whether the February 2010 adjustment, alone or in combination with the May 2010 adjustment, satisfied the claims of all class members.

Although the Ninth Circuit's decision in *Pitts* did not address the question whether payment to the named plaintiff as well as some, but not all, of the other putative class members would be sufficient to moot an action such as this one prior to class certification, the court's analysis in *Pitts* appears to indicate that such a "partial payment" would not render the action moot. The court in *Pitts* ruled that even after receiving a tender of judgment, the named plaintiff may continue to represent the class for purposes of class certification. If the class is then certified, the court held, the case may continue "despite full satisfaction of the named plaintiff's individual claim because an offer of judgment to the named plaintiff fails to satisfy the demands of the class." *Pitts*, 653 F.3d at 1092. And if the district court denies class certification, the named plaintiff "may still pursue a limited appeal of the class certification issue." *Id.* The rationale underlying that line of analysis is that the named plaintiff may continue to represent the putative class members for class certification purposes despite an offer of judgment that would

satisfy the named plaintiff's individual claims. That rationale would appear to apply equally whether the defendant had offered payment of the claims of only a few of the class members or many of them, as long as the offer failed "to satisfy the demands of the class." *Id.*

In light of the Ninth Circuit's intervening decision in *Pitts* and in light of the post-dismissal adjustment of the 103,320 additional DPP accounts, resulting in an additional 69,198 refunds, we conclude that the dismissal order should be remanded to the district court for further consideration. The further audit and the additional refunds raise the question whether and to what extent the entire prospective class that Mr. Russell seeks to represent has now been granted the relief, through voluntary action by the government, that his lawsuit was designed to obtain. Further development of these facts will no doubt help determine if the case, even if not moot at the time of the district court's original dismissal order, is now moot.

### III

We now turn to appeal No. 2011-1230, the appeal from the denial of Mr. Russell's post-judgment motion for relief from the judgment under Rule 60(b)(2). In his motion, Mr. Russell claimed that he discovered, months after the entry of judgment in the case, that the amount proffered to him by the government, $149.78, was $30.71 less than he should have been given in the refund of the interest overcharges on his DPP account. He argued that the information in question was not available to him earlier, because he had to obtain the assistance of an expert in order to calculate exactly how much was owed to him. The district court denied the Rule 60(b) motion on the ground that Mr. Russell had failed to show that he

could not have discovered the alleged new evidence earlier through the exercise of due diligence. In particular, the district court ruled that Mr. Russell did not provide "any persuasive reason why [the expert's] new analysis could not have been performed in a timely manner if [Mr. Russell] had exercised due diligence on this issue."

The district court plainly did not abuse its discretion in determining that Mr. Russell failed to satisfy the exacting standard for showing that the evidence in question was new evidence that could not have been discovered earlier in the exercise of due diligence. *See Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990). Critically, Mr. Russell waited for months after he was provided his refund before requesting that his accounting expert review the calculations relating to the refund. Under those circumstances, the delay in obtaining the revised information about the amount of his claim is fairly attributable to Mr. Russell and does not give rise to a valid claim of newly discovered evidence that could not have been discovered earlier with the exercise of due diligence. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987). We therefore sustain the district court's denial of the Rule 60(b) motion for relief from the judgment.

IV

In sum, while we uphold the district court's rulings in several respects, we vacate the court's dismissal order and remand the case for further factual development and reconsideration in light of *Pitts* and in light of the government's further adjustments of the DPP accounts.

Each party shall bear its own costs for this appeal.

**VACATED AND REMANDED**