FILED

JUL 2 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
CECIL FRED MOTLEY, JR.,

         Debtor.

BAP No. CC-23-1188-CPL

Bk. No. 2:23-bk-16535-WB

CECIL FRED MOTLEY, JR.,

         Appellant,

v.

CRYSTAL LINARES,

         Appellee.

**MEMORANDUM**[*]

Appeal from the United States Bankruptcy Court
for the Central District of California
Julia Wagner Brand, Bankruptcy Judge, Presiding

Before: CORBIT, PEARSON[**], and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor, Cecil Fred Motley Jr. ("Motley"), appeals the

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[**] Hon. Teresa H. Pearson, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

bankruptcy court's order granting creditor Crystal Linares' ("Linares") motion for relief from the automatic stay to continue an unlawful detainer proceeding against Motley in state court. Linares is the owner and landlord of the property that Motley rents. After the bankruptcy court granted Linares relief from stay, and during the time this appeal was pending, the bankruptcy court dismissed Motley's bankruptcy case. Upon dismissal, the automatic stay terminated by operation of § 362(c)(2)(C). Consequently, any ruling by this Panel reversing the bankruptcy court's relief from stay order would not give Motley any effective relief. We therefore DISMISS this appeal as moot.

## FACTS[2]

Motley rents certain real property located on Palos Verdes Drive North in Rolling Hills Estates, California ("Property") pursuant to a month-to-month tenancy agreement. The Property is where Motley lives and the monthly rent is $12,000. Motley has not paid rent since November 1, 2022. Consequently, Linares began exercising her state law remedies by serving a notice to quit on Motley. The notice informed Motley that within three days of receiving the notice, he was required to pay $24,000 in rent arrearage or quit the Property. When Motley failed to vacate the Property or pay the rent arrearage, Linares filed an unlawful detainer action against

---

[2] We exercise our discretion to take judicial notice of the docket and documents filed in Motley's underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Motley in state court (the "UD Action"). Trial in the UD Action was scheduled for October 10, 2023.

However, just days before the scheduled trial, Motley filed a chapter 13 petition staying any further litigation in the UD Action. Linares sought relief from the automatic stay to continue the UD Action in state court (the "Motion").

Linares argued she was entitled to relief from the automatic stay for cause pursuant to § 362(d)(1) because Motley had not made any rent payments since he filed the bankruptcy petition. Linares also argued she was entitled to relief from the automatic stay pursuant to § 362(d)(2) because Motley did not have any equity in the Property and, because the Property was residential, it was not necessary to an effective reorganization.

The bankruptcy court held a hearing on the Motion on November 14, 2023. At the hearing, Motley admitted he was behind in rent. However, he attempted to convince the court that a third party had deposited funds in escrow sufficient to cure the arrearage and, therefore, relief from stay should not be granted. Motley's testimony during the hearing regarding the alleged third-party funds for rental payments and the non-residential purpose of the Property was inconsistent and not supported with admissible evidence.

First, Motley argued that the Property was necessary to his reorganization because the Property was both his laboratory and his

residence. However, counsel for Linares disputed Motley's allegation and maintained the Property was a residential tenancy. Motley did not provide any evidence beyond his self-serving testimony to establish the Property was more than a residence or that he had approval to use it as a laboratory. In answering a direct question by the bankruptcy court, Motley admitted that the Property was in a residential neighborhood in Palos Verdes Estates.

As to the rent arrearage, Motley testified that a third party (Hamershlag[3]) wanted to purchase certain intellectual property from him. As part of the agreement, Hamershlag had allegedly paid Linares two months' rent. Hamershlag had also allegedly placed sufficient funds to cure the rent arrearage into escrow and would disperse those funds to Linares upon Linares' dismissal of the UD Action. Motley's testimony, however, was not clear as to the funds or the agreement. Motley stated:

> [A] company called Hamershlag and Bore . . . got a signed and executed note with Linares. This [note] is different from the first note [that Motley attached to his opposition]. This is the second note, and that note was to pay monthly rent on our behalf.[4] And we did pay -- they did pay two notes -- they paid two months' rent, okay, and then they found out that we were being sued for unlawful detainer.

---

[3] The full name of the company was provided in Motley's appellate brief as Hamershlag Private Capital Management Limited.

[4] Although Motley attached certain documents to his opposition and to his appellate brief, none of the documents purport to be an agreement to pay rent on Motley's behalf.

So they said, wait a minute. The key to us purchasing your intellectual property -- because that's what they're all about. The key to purchasing your intellectual property is that the lab is in place, and then you are able to do this work. This is COVID-19 work for testers and treatment. Okay.

After they found out they had -- we were being sued for the unlawful detainer, they said, well, we don't want to be delinquent on the note -- this is Hamershlag, says we don't want anybody suing us for delinquency on the note. So, all the following payments were put in escrow by Hamershlag. And at the time that unlawful detainer is removed, Hamershlag can get -- will pay the -- whatever this accumulated in escrow, and we'd be done with this. But they won't pay the Linares' money and then turn around and they throw us out and the lab is gone. And it will take at least 18 months to re-do the lab.

Hr'g Tr., at 5:5-6:5, Nov. 14, 2023.

When the bankruptcy court pressed Motley for more detail about when Linares would be paid, Motley seemed to backtrack on his assurances that there was money in escrow sufficient to cure the rent arrearage. Motley testified that Hamershlag had committed, not deposited, stating, "Hamershlag has committed . . . to $100,000 . . . you know, to calm this whole thing down." *Id.* at 10:25; 11:1-4.

After hearing from both parties, the bankruptcy court issued an oral ruling granting the Motion. On January 8, 2024, the bankruptcy court entered a "Stay Relief Order" consistent with its oral ruling which Motley timely appealed. While this appeal was pending, the BAP denied Motley's motion for stay pending appeal and the bankruptcy court dismissed

Motley's bankruptcy case.[5] Motley did not appeal the dismissal order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (G). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## ISSUE

Whether this appeal is moot.

## STANDARD OF REVIEW

Questions regarding our jurisdiction are reviewed de novo. *See Belli v. Temkin (In re Belli)*, 268 B.R. 851, 853 (9th Cir. BAP 2001); *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Before considering the merits of Motley's appeal, the Panel must determine its own jurisdiction over this appeal. *See Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 997-98 (9th Cir. 2005). The Panel lacks jurisdiction to hear moot appeals. *See United States v. Pattullo (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001). In addition, if an appeal becomes moot while it is pending before us, we must dismiss it. *Id.*at 900-01; *see also Allard v.

_____

[5] Motley's bankruptcy case was dismissed on May 14, 2024. Motley did not seek a stay pending appeal by the bankruptcy court.

*DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989) ("If events subsequent to the filing of an appeal moot the issues presented in a case, no justiciable controversy is presented.") (citations omitted).

The doctrine of mootness arises from Article III of the Constitution, which limits the jurisdiction of all federal courts to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). An appeal is constitutionally moot if it is impossible for the court to give the appellant any effective relief if the court decides the matter on the merits in the appellant's favor. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *In re Thorpe Insulation Co.*, 677 F.3d at 880.

The dismissal of Motley's bankruptcy case caused the termination of both the automatic stay and the "actual, ongoing controversy." *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). This is because, pursuant to § 362(c)(2)(B), the automatic stay terminated when the case was dismissed. Consequently, since the entry of the dismissal order in the bankruptcy case, there has been no automatic stay in effect. Therefore, even if the Panel was inclined to vacate the Stay Relief Order, the automatic stay has terminated as a matter of law, and this Panel lacks the authority to resurrect the stay and its protections for Motley.[6] Because the dismissal

---

[6] "Absent an appeal from the dismissal order[], we have no power to restore the bankruptcy proceeding." *Castaic Partners II, LLC v. Daca–Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 969 (9th Cir. 2016).

order—an event subsequent to the filing of the present appeal—has foreclosed the possibility of this Panel providing Motley effective relief, this appeal must be dismissed as moot. *See Cook v. Fletcher* (*In re Cook)*, 730 F.2d 1324, 1326 (9th Cir. 1984); *Pitts*, 653 F.3d at 1087 ("[I]f events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot . . . .") (citation omitted).

Because the appeal is moot, we do not address the arguments raised by Mr. Motley on appeal. *See Bianco v. Erkins*, 235 F. App'x 429, 430 (9th Cir. 2007) (declining to review due process claims when appeal is moot).

## CONCLUSION

For the reasons stated above, we DISMISS the appeal as moot.