# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-7344

DAVID A. HAMILL, PETITIONER,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before TOTH, LAURER, and JAQUITH, *Judges*.

## ORDER

LAURER, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

On December 19, 2022, David A. Hamill, through counsel, petitioned the Court for extraordinary relief in the nature of a writ of mandamus. He argued that VA had refused to decide whether he'd submitted new and material evidence related to his other than honorable (OTH) character of discharge (COD). He relied on *Harris v. McDonough*[1] to ask the Court to order VA to issue an appealable decision readjudicating his COD.

After the Secretary responded, Mr. Hamill filed a request for class certification and class action (RCA). He acknowledged that his request for relief had been satisfied because he'd received a new and material evidence determination after he filed his petition. But he argues that, even so, his petition isn't moot, and his class action request isn't either, based on certain exceptions to mootness. He urges the Court to certify a class of veterans who received OTH characters of discharge then applied for VA benefits but received decisions that adjudicated only healthcare eligibility, not COD. The Secretary opposes certification, arguing that the class Mr. Hamill describes has no live case or controversy. The Court convened a panel to decide the matter.[2] As explained below, we dismiss Mr. Hamill's petition and deny his RCA.

## I. BACKGROUND

Mr. Hamill served in the United States Marine Corps from January 2009 to March 2013. He was discharged from service under OTH conditions.[3] Upon discharge, he filed a claim for disability compensation for post-traumatic stress disorder (PTSD), other psychiatric issues, and back pain.[4] VA denied his application in May 2014 because his OTH COD made him ineligible for "all benefits administered by the Department of Veterans Affairs under the provisions of 38

---

[1] *Harris v. McDonough*, 33 Vet.App. 269 (2021) (per curiam order).
[2] *See* U.S. VET. APP. INTERNAL OPERATING PROCEDURES XV.
[3] Petition (Pet.) at Exhibit (Ex.) A.
[4] Pet. at Ex. B.

C.F.R. § 3.12(c)(6) and 38 U.S.C. § 5303(a)."[5] VA noted that petitioner's COD didn't bar him from receiving healthcare under chapter 17 of title 38, U.S. Code, "for any disabilities determined to be service connected" for his period of service.[6]

In May 2017, Mr. Hamill filed a new claim for disability benefits based on PTSD, chronic fatigue syndrome, fibromyalgia, chronic depression, lower back pain, and hearing loss.[7] VA responded in July 2017 and construed Mr. Hamill's filing as an attempt to reopen the May 2014 decision that had concluded that his COD barred him from service connection except in limited circumstances under chapter 17. VA explained that it couldn't reopen the May 2014 decision because (1) the time to appeal that decision had expired and (2) Mr. Hamill hadn't submitted new and material evidence to warrant reopening his claim.[8] VA included a notice of appellate rights with its July 2017 decision, and Mr. Hamill didn't appeal.

Four years later, on March 12, 2021, Mr. Hamill submitted two new claims to VA.[9] First, he filed a claim seeking compensation for the same disabilities he described in his 2017 claim, thereby implicitly seeking to reopen those claims.[10] That same day, he also filed a new benefits application seeking compensation for several other disabilities.[11] VA adjudicated both sets of claims in a May 19, 2021, decision and granted service connection for PTSD for treatment purposes only.[12] VA denied service connection for the rest of the claimed disabilities and included a notice of appellate rights with its decision.[13] Again, Mr. Hamill didn't appeal.

In response to a July 2022 letter from Mr. Hamill's attorney, asking VA to "make a decision regarding [Mr. Hamill's] discharge characterization," VA notified Mr. Hamill that he should contact his service department to upgrade his COD.[14] Five months later, in December 2022, Mr. Hamill petitioned the Court, arguing that VA had violated *Harris* because it hadn't adjudicated whether he'd submitted new and material evidence relevant to his COD when it granted chapter 17 benefits.

On March 6, 2023, the Secretary moved to dismiss the petition as moot and included a copy of a February 2023 letter that VA had sent to Mr. Hamill, explicitly finding that he hadn't submitted new and material evidence to warrant reopening the May 2014 COD decision.[15] Mr. Hamill filed his RCA that same day, recognizing that VA's February 2023 letter had "satisfied" his request for an appealable decision, but contending that the Court should still certify a class of

---

[5] Pet. at Ex. D.

[6] Pet. at Ex. D. There seems to be a discrepancy within VA's letter over whether petitioner was eligible for chapter 17 benefits since the May 2014 decision contains conflicting statements. Because petitioner was eventually granted chapter 17 benefits and neither party argues over the discrepancy in the May 2014 decision, the Court determines that the discrepancy is irrelevant, and the parties have waived any argument on that point.

[7] Pet. at Ex. E.

[8] Pet. at Ex. F.

[9] The Court notes that Mr. Hamill submitted his claims on March 12, 2021, but VA didn't mark them as uploaded into their system until May 10, 2021.

[10] Pet. at Ex. G.

[11] Pet. at Ex. G.

[12] Pet. at Ex. H.

[13] Pet. at Ex. H.

[14] Pet. at Exs. I, J.

[15] Secretary's Response to Pet. at Attachment A.

veterans who hadn't received explicit new and material evidence determinations like the one he'd received.[16]

The Secretary opposes the RCA because he believes the purported class has no live case or controversy. First, he argues that Mr. Hamill's claim is moot since VA implicitly declined to reconsider its COD determination in the May 2021 decision that granted limited chapter 17 benefits for PTSD but denied all other claims. The Secretary reasons that the May 2021 decision mooted Mr. Hamill's petition and satisfied *Harris* because it included a notice of appellate rights. Next, the Secretary maintains that the purported class is inherently moot because its members— by virtue of their membership—would've already received implicit new and material evidence adjudications from VA, with attached notices of appellate rights, so they haven't suffered any harm under *Harris*. And last, the Secretary contends that Mr. Hamill hasn't shown that proceeding by class action would be superior to proceeding by precedential decision, and since the implicit determination question is case specific, a class action would prove an unwieldy tool.

## II. ANALYSIS

### A. The Petition Is Moot

The Court adheres to Article III of the U.S. Constitution's case-or-controversy jurisdictional requirements[17]—meaning that there must be a live issue for the Court to review a case.[18] "'[W]hen the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,'" the case or controversy becomes moot.[19] And when a petitioner receives the relief sought, the appropriate course is to dismiss the petitioner's case as moot.[20]

Here, the parties essentially agree that there's no case or controversy for the Court to rule on with respect to the petitioner. While Mr. Hamill contends that his petition isn't moot, he admits that "his individual request for an appealable decision has been satisfied," which amounts to acknowledging that his petition is moot since there's no more relief that he could receive or that the Court could direct VA to provide.[21] Putting that aside, the parties fundamentally disagree on *why* the petition is moot and where the relief that Mr. Hamill has received flows from. That divergence dictates the disposition for both Mr. Hamill's petition and his class action request.

Mr. Hamill points to VA's February 2023 letter as the source of the relief he received. That letter explicitly stated that "no new and relevant evidence [has been] submitted to reopen your claim for [COD] determination."[22] The Secretary frames Mr. Hamill's position as a concession and argues that his petition is moot "[b]ecause the [VA regional office] has issued an appealable

---

[16] Petitioner's RCA at 7.
[17] *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014) (per curiam order); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).
[18] *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam) ("When there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction.").
[19] *Godsey v. Wilkie*, 31 Vet.App. 207, 218 (2019) (per curiam order) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)).
[20] *Thomas v. Brown*, 9 Vet.App. 269, 270-71 (1996) (per curiam order).
[21] Petitioner's RCA at 7.
[22] Secretary's Response to Pet. at Attachment A.

decision," so there's no case or controversy.[23] Although the Secretary first relied on the same February 2023 letter that Mr. Hamill cites, the Secretary now maintains that Mr. Hamill's petition is moot based on the May 2021 letter that included a notice of appellate rights. In that letter, VA implicitly denied reopening its COD determination and provided a notice of appellate rights, which satisfied *Harris*.[24] Thus, the Secretary concludes that Mr. Hamill hasn't described a cognizable harm because he received his requested relief back in May 2021.

The diverging positions clearly have high stakes: if VA mooted Mr. Hamill's petition in February 2023—after he had already filed his petition with this Court—then Mr. Hamill could reasonably argue that, although he'd received his requested relief, the inherently transitory and picking off exceptions to mootness might allow the class he described to go forward.[25] On the other hand, if the May 2021 letter mooted Mr. Hamill's petition before he filed it, his petition falls away, as does the possibility of certifying a class, since both were moot from the jump.

The implicit denial doctrine, plus a close reading of *Harris*, resolves the controversy. Based on *Harris*, Mr. Hamill argues that VA must explicitly decide whether a claimant has submitted new and material evidence sufficient to reopen a COD decision. He contends that, in his case, VA didn't comply with its adjudicatory obligation until February 2023, when it explicitly stated that he hadn't submitted new and material evidence. But the crux of *Harris* describes and remedies a harm that's distinct from what Mr. Hamill describes. The *Harris* Court stated that, in essence, the relief Mr. Harris sought was "a decision subject to appeal."[26] The Court acknowledged that VA adjudicators must "make a formal [COD] determination when presented with a claim for benefits predicated on a service member's [OTH] service."[27] But the Court included that reasoning only to explain why the option for "administrative relief from a service department" couldn't excuse VA from issuing a decision with a notice of appellate rights.[28] The Court emphasized the relief that Mr. Harris sought and that VA refused to provide: "a VA decision that will allow him to avail himself of the regular appeals process, not a substitute for that process."[29]

*Harris* must be read in tandem with the implicit denial doctrine since that doctrine is already a well-established part of the framework that VA adjudicators operate within. The United States Court of Appeals for the Federal Circuit has explained that, in some cases, "a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [Department of Veterans Affairs] did not expressly address that claim in its decision."[30] "[T]he implicit denial rule is, at bottom, a notice provision."[31] By its nature, the rule arises when a veteran receives notice that doesn't comply with the strictures of an applicable notice provision. And that makes sense

---

[23] Secretary's Response to Pet. at 4; *see also* Secretary's Response to RCA at 3-7.

[24] Pet. at Ex. I.

[25] *See Godsey*, 31 Vet.App. at 218-20 (applying the inherently transitory exception to mootness to allow a class action to go forward even though the claims had resolved because the claims were "unavoidably time-sensitive" and "acutely susceptible to mootness").

[26] *Harris*, 33 Vet.App. at 275.

[27] *Harris*, 33 Vet.App. at 273 (quoting *Robertson v. Shinseki*, 26 Vet.App. 169, 175 (2013), *aff'd sub nom. Robertson v. Gibson*, 759 F.3d 1351 (Fed. Cir. 2014)).

[28] *Harris*, 33 Vet.App. at 273.

[29] *Harris*, 33 Vet.App. at 274.

[30] *See Adams v. Shinseki*, 568 F.3d 956, 961 (Fed. Cir. 2009).

[31] *Adams*, 568 F.3d at 965.

since implicit denial can be invoked only when a claimant's notice isn't explicit or when it fails to comply with a regulatory—or even statutory—notice provision. Technically noncompliant notice can still provide a veteran with the substantive information that he's due, which is why implicit denial has repeatedly received the Federal Circuit's sanction.[32] Yet the dissent parts ways with us here. His departure stems from a commendable desire to ensure that veterans receive adequate notice. But implicit denial folds in his concern because the doctrine only applies when a court is convinced that the notice that a claimant received was adequate, even if it wasn't textbook.[33]

Deciding whether VA implicitly denied a claim depends on notice and hinges on whether a reasonable claimant could conclude, from the notice that he received, that his claim had been implicitly denied.[34] Notice inquiries under the implicit denial doctrine are circumstance-specific, so they look to what a reasonable claimant in a particular veteran's position would be expected to understand.[35] Applying the implicit denial doctrine allows a court to balance a claimant's right to know how his claim has been decided with VA's interest in finality.[36] Our Court in *Cogburn v. Shinseki* fleshed out how to strike that balance based on (1) "the specificity of the claims or the relatedness of the claims"; (2) the "specificity of the adjudication," with an eye to whether "the adjudication allude[s] to the pending claim in such a way that it could be reasonably inferred that the prior claim was denied"; (3) the "timing of the claims" and whether they're closely associated time-wise; and (4) whether the claimant was represented by counsel.[37]

Applied to Mr. Hamill's case, all four *Cogburn* factors weigh one way: VA implicitly denied his request to reopen his prior COD determination and said enough in its May 2021 decision to notify Mr. Hamill how it had decided the issue.

First, Mr. Hamill's claims are closely tied—both in timing and in content. On the same day, March 12, 2021, he filed one application seeking new disability benefits and another application seeking to reopen claims for disability claims VA previously denied based on the adverse COD determination. VA's May 2021 decision more than alludes to the relationship between the claims and petitioner's OTH discharge—it specifically turns on the fact that an adverse COD bars VA from granting benefits beyond chapter 17. The one directly controls the other. VA denied Mr. Hamill's new benefits application because of his adverse COD, which

---

[32] *See, e.g., Adams,* 568 F.3d at 961; *Jones v. Shinseki,* 619 F.3d 1368, 1373 (Fed. Cir. 2010); *Deshotel v. Nicholson,* 457 F.3d 1258, 1262 (Fed. Cir. 2006); *Williams v. Peake,* 521 F.3d 1348, 1351 (Fed. Cir. 2008); *Munro v. Shinseki,* 616 F.3d 1293, 1299 (Fed. Cir. 2010); *Cogburn v. McDonald (Cogburn III),* 809 F.3d 1232, 1236-37 (Fed. Cir. 2016), *aff'g Cogburn v. Gibson (Cogburn II),* No. 12-3323, 2014 WL 2600052 (Vet. App. June 11, 2014) (mem. dec.), *aff'g after remand Cogburn v. Shinseki (Cogburn I),* 24 Vet.App. 205 (2010); *Hampton v. McDonough,* 68 F.4th 1376, 1381-82 (Fed. Cir. 2023), *petition for cert. filed,* No. 23-543 (U.S. Nov. 21, 2023).

[33] *Cogburn III,* 809 F.3d at 1236 ("[W]hen the implicit denial rule applies, the claimant necessarily 'received adequate notice of, and an opportunity to respond to, the [VA's] decision . . . [and therefore] was not deprived of any due process rights.'" (quoting *Adams,* 568 F.3d at 965)).

[34] *See Adams,* 568 F.3d at 962-64.

[35] *See Munro,* 616 F.3d at 1299 (holding that the implicit denial rule properly applied because the veteran "had multiple reasons to know" that his claims had been denied); *Jones,* 619 F.3d at 1373 (reaching the same conclusion because the veteran in the case "reasonably [could] be expected to understand" that his claim had been denied based on the particular procedural history).

[36] *See Adams,* 568 F.3d at 963.

[37] *Cogburn I,* 24 Vet.App. at 212-13.

remained in place and which VA cited as evidence it had considered.[38] Had VA reached a different conclusion on the COD question, it would've had to address his disability claims on the merits rather than granting only limited chapter 17 benefits and denying his new disability claims outright. Furthermore, only a few months separated petitioner's filings and VA's adjudication, leaving little doubt about what VA was adjudicating. Finally, Mr. Hamill was represented by his current counsel when he filed the applications that prompted VA's May 2021 letter. Because an attorney providing competent representation would advise a veteran "of any claim [or issue] that was unadjudicated in a regional office decision, and the possible consequences of not directly addressing the claim at the time of the original rating action," we must presume that Mr. Hamill had a reasonable understanding of the implications of VA's actions.[39] All told, there's only one way to read VA's May 2021 decision: since it hinged on his adverse COD, it gave Mr. Hamill sufficient notice that VA had declined to revisit the COD issue.

This conclusion is reinforced by the history of VA proceedings over the COD issue. VA explicitly adjudicated Mr. Hamill's COD in May 2014, and he didn't appeal.[40] Three years later, Mr. Hamill tried to reopen the 2014 decision. In its July 2017 decision, VA explicitly found that Mr. Hamill hadn't submitted new or material evidence, and it included a notice of appellate rights.[41] Again, Mr. Hamill didn't appeal. In March 2021, appellant filed a new application for benefits and another claim. Two months later, VA adjudicated both filings, granted chapter 17 benefits for PTSD, denied the remaining claims, and implicitly adjudicated the COD question. VA included another notice of appellate rights.[42] To date, petitioner has received two decisions with notices of appellate rights, either explicitly or implicitly adjudicating his COD.

VA certainly must adjudicate every claim that's been raised, but Mr. Hamill misreads the caselaw in saying that VA's failure to explicitly decide every issue leaves a claim or request pending. Reading our precedent that way would undercut the implicit denial doctrine. *Harris* doesn't displace the applicability of implicit denial in this context or in any other. The decisions VA issued put petitioner on notice of the Agency's determination on the character of his discharge and thereby gave him access to the regular appeals process, so *Harris* doesn't afford him an avenue for any more relief than what he's already received. Since Mr. Hamill received a COD determination and a notice of appellate rights—all before he filed his petition—no harm remains for the Court to remedy, so his petition is moot.

Petitioner asserts that applying the implicit denial doctrine to the May 2021 decision would require the Court to presume that VA violated the more robust notice obligations made part of 38 U.S.C. § 5104 by the Veterans Appeals Improvement and Modernization Act of 2017 (AMA), which would conflict with the presumption of administrative regularity.[43] But the same allegation could be leveled against the doctrine and the preamendment version of section 5104, yet the two coexisted. At bottom, petitioner suggests that the revised version of section 5104 does "not allow

---

[38] *See* RCA at Ex. D (listing the "Administrative Decision received on May 15, 2014" as one of the pieces of evidence it had reviewed).

[39] *Cogburn I*, 24 Vet.App. at 213.

[40] Pet. at Ex. D.

[41] Pet. at Ex. F.

[42] Pet. at Ex. H.

[43] Petitioner's Reply at 8-9.

for implicit denials,"[44] but he doesn't adequately develop an argument that Congress intended through the AMA to sweep away this longstanding aspect of veterans law.[45]

## B. No Mootness Exception Applies

The claims of the proposed class members don't survive our holding that Mr. Hamill's petition is moot. Although he acknowledges that he has received his requested relief, Mr. Hamill argues that the class should still go forward because the inherently transitory exception to mootness, as well as the related picking off exception, applies to the injuries sustained by the proposed class members.[46]

A class action can continue after the "'named plaintiff's claim'" has been rendered moot if an exception to mootness applies.[47] Here, petitioner argues that the inherently transitory exception to mootness applies, so the Court should still certify the class he describes even though he's received his requested relief. The Court has adopted the inherently transitory exception to mootness, which deals with classes comprised of claims that are "unavoidably time-sensitive" and "acutely susceptible to mootness."[48] Inherently transitory claims are those that "a trial court will not have enough time to rule on" before they become moot.[49] To let claimants litigate those harms, courts can certify classes that consist of inherently transitory claims even after a named plaintiff's claim has become moot. That way, the short-lived nature of the claim doesn't shield a defendant— VA here—from litigating a case just because it's susceptible to a quick remedy. The picking off exception to mootness is a near cousin to the inherently transitory exception. It refers to those scenarios in which a defendant would like to avoid litigation, and to do so, gives an injured claimant the relief that he was seeking to moot his claim and close off the possibility of litigation.[50] Though distinct, the exceptions end in the same spot. One deals with claims that are moot because they're "transitory by [their] very nature," and the other deals with claims that are made "transitory by virtue of the defendant's litigation strategy."[51] In either case, without an operative exception, mootness could insulate those claims from judicial review.

Mr. Hamill cites both exceptions to argue for the certification of the class of claimants he's described.[52] But neither exception applies here. Take the second exception first. We've concluded that the May 2021 letter—not the February 2023 letter—mooted Mr. Hamill's petition. VA issued its May 2021 letter in the ordinary course of business, well before Mr. Hamill filed his petition in December 2022. Since no litigation was pending in May 2021, VA couldn't have issued the May

---

[44] *Id.* at 8 (capitalization altered).

[45] The dissent insists that we are taking an "expansive view of the implicit denial" doctrine. *Post* at p. 10. But we are simply applying the well-established *Cogburn* factors to the COD dispute in this case. Rather, it is the dissent that seems to adopt the sweeping position that implicit denials cannot be sanctioned in the AMA context. *See id.*

[46] Petitioner's RCA at 7-8 (citing *Godsey*, 31 Vet.App. at 217-20).

[47] *Godsey*, 31 Vet.App. at 218-20 (citing *Monk v. Shulkin* (*Monk I*), 855 F.3d 1312, 1317 (Fed. Cir. 2017), *class certification denied sub nom. Monk v. Wilkie* (*Monk II*), 30 Vet.App. 167 (2018) (en banc order), *aff'd*, *Monk III*, 978 F.3d 1273 (Fed. Cir. 2020)).

[48] *Godsey*, 31 Vet.App. at 219 (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)).

[49] *Godsey*, 31 Vet.App. at 219 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991)).

[50] *Godsey*, 31 Vet.App. at 219 (quoting *Pitts*, 653 F.3d at 1091).

[51] *Pitts*, 653 F.3d at 1091.

[52] Petitioner's RCA at 7-8.

2021 decision to moot Mr. Hamill's petition and avoid litigation. Thus, the picking off exception doesn't apply. The same goes for the inherently transitory exception to mootness. That exception has only limited usefulness: it only works to capture claims that don't last long enough for the Court to get a chance for review. The alleged injury here—VA's inaction related to a request to revisit a COD determination—isn't by its nature a transitory one that would permit us to ignore mootness.

Because Mr. Hamill's petition was mooted before he sought aggregate litigation, and since no exception to mootness applies, the Court denies the RCA.[53]

### C. A Class Action Wouldn't Be Superior to a Precedential Decision

The Court doesn't have to walk through the strictures of Rule 23, but we'll address one issue for the sake of completeness. When it reviews an RCA, the Court considers whether the proposed class meets the requirements for class certification laid out in Rule 23 of our Rules of Practice and Procedure.[54] The Court also considers whether a class action would be superior to a "precedential decision granting relief on a non-class action basis."[55] Prospective class representatives must make this showing.[56] And it's no small feat because this Court has limited factfinding abilities, so class actions here are the exception, not the rule.[57] To that end, the Court presumes that "classes should not be certified because our ability to render binding precedential decisions ordinarily will be adequate."[58]

When considering whether this presumption has been rebutted, some of the factors that the Court considers include the litigation's factual complexity, whether the record has been fully developed, and whether the class has alleged enough facts to warrant remedial enforcement.[59] These factors go to the question of manageability, a prime concern given our appellate posture and limited factfinding ability.[60]

Proceeding by class action isn't the right way to go here. Implicit adjudication questions are case specific, so they're ill-suited to both class-wide review and class-wide relief. Although

---

[53] *Kernz v. McDonough*, ___ Vet.App. ___, ___, No. 20-2365, 2023 WL 6459373, at *13 (Oct. 4, 2023) (en banc order), *appeal docketed*, No. 24-1171 (Fed. Cir. Nov. 21, 2023).

[54] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (holding that a court should first assess whether a requested class action satisfies procedural requirements under Rule 23 of the Federal Rules of Civil Procedure before conducting an inquiry into the merits of the claims advanced); *see also* U.S. VET. APP. R. 23(a).

[55] U.S. VET. APP. R. 22(a)(3).

[56] *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court . . . ."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

[57] *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 62-63 n.9 (2020) (order) (quoting *Skaar v. Wilkie*, 32 Vet.App. 156, 196 (2019) (en banc order), *class certification aff'd*, 33 Vet.App. 127 (2020), *reversed on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022)), *aff'd per curiam sub nom. Gardner-Dickson v. McDonough*, No. 2021-1462, 2021 WL 5144367 (Fed. Cir. Nov. 5, 2021) (nonprecedential R. 36 judgment).

[58] *Skaar*, 32 Vet.App. at 196.

[59] *Skaar*, 32 Vet.App. at 197.

[60] *Godsey*, 31 Vet.App. at 223 n.4 (acknowledging that the Court considers manageability when it certifies a class, even though it won't "categorically decline to certify classes because class or aggregate actions may be more difficult to manage than cases involving individual petitions"); *see also Monk II*, 30 Vet.App. at 184-200 (Allen, J., concurring in part, dissenting in part).

Mr. Hamill alleges that VA has a practice of failing to adjudicate whether a claimant has submitted new and material evidence, an allegation that resonates in the language of Federal Rule of Civil Procedure 23(b)(2), he hasn't shown that the Court could fashion relief for all the class members without conducting an individualized review of each claimant's records. The common issue facing the potential class members is a legal one—whether the implicit denial doctrine applies—and that issue is bound tightly to individualized facts—whether each veteran received notice that could reasonably alert the claimant that his or her attempt to reopen a COD determination had been implicitly denied.

To the extent that any prospective class member has a live case or controversy—and to be clear, the Court isn't saying whether that's the case for any claimant here—that theoretically live claim wouldn't be fit to resolve by class action. Here's why. If any particular prospective class member didn't receive a decision that implicitly adjudicated whether he'd submitted new and material evidence related to a prior COD decision, that claim's merits would revolve around case-specific facts that would best be handled by an individual appeal. Setting aside all the mootness concerns the Court has discussed, Mr. Hamill hasn't persuaded the Court that a class action would be a better vehicle for proceeding than a precedential decision—which would then guide individualized litigation—given the fact-specific nature of the claims he's described as similarly situated to his own.

One final note. The Secretary has informed the Court that he's updated the relevant portion of the *Veterans Affairs Adjudication Procedures Manual, M21-1,* so VA now must issue explicit new and material evidence determinations when it decides whether a prior COD decision can be reopened.[61] And the Secretary assures the Court that VA is trying to locate veterans and issue separate COD determinations—presumably like the one Mr. Hamill received in February 2023.[62] The policy change the Secretary describes takes the wind out of Mr. Hamill's sails since it shows that the Secretary is doing what Mr. Hamill wanted done—though it's not dispositive since the class doesn't survive our holding that Mr. Hamill's petition was moot well before he filed it.

### III. CONCLUSION

Based on the above, it is

ORDERED that petitioner's March 6, 2023, request for class certification and class action is denied. It is also

ORDERED that the Secretary's March 6, 2023, motion to dismiss the petition is granted, and petitioner's December 19, 2022, petition is DISMISSED.

DATED: December 18, 2023

---

[61] Secretary's Response to RCA at 13, Appendix 2.
[62] Secretary's Response to RCA at 13, Appendix 2; *see also* Secretary's Response to Pet. at Attachment A.

JAQUITH, *Judge*, dissenting: Though I appreciate my colleagues' thorough and well-written opinion, I disagree with their dismissal of the veteran's petition and denial of his class action request, so I respectfully dissent. In my view, the majority's expansive view of the implicit denial construct and disregard for the AMA neutralize the veteran's right to notice, and the majority's narrow reading of *Harris*[63] neutralizes that case's prescribed remedy. Sanctioning silent denials of implied claims relegates the real adjudicatory work to the shadows, with a loss of transparency that sows confusion among the parties and undermines confidence in the system.

## I. THE VETERAN'S CLAIMS AND VA'S DECISIONS

The majority holds that a May 2021 decision by a VA regional office (RO) implicitly denied the veteran's request to reopen his prior character of discharge determination, and that the RO "said enough in its May 2021 decision to notify Mr. Hamill how it had decided the issue."[64] The RO's May 2021 decision purportedly was responsive to two documents signed by the veteran's representative on March 12, 2021, and received by VA on May 10, 2021. One was an application for disability compensation for eight disabilities: irritable bowel syndrome, acid reflux/gastroesophageal reflux disease (GERD), equilibrium issues, stuttering, memory issues, sensitivity to light, headaches/migraines, and traumatic brain injury (TBI).[65] The application had a section for service information, but it was left blank. The other document was a supplemental claim listing six issues: PTSD, chronic fatigue syndrome, fibromyalgia, depression, lower back, and hearing loss.[66] Neither document said anything about the veteran's discharge.

The RO's May 2021 decision granted "[s]ervice connection for treatment purposes only under 38 USC chapter 17 for [PTSD]" and denied service connection for four other disabilities.[67] The disabilities adjudicated were combinations of the disabilities claimed: PTSD "(also claimed as memory issues)"; GERD "(also claimed as acid reflux)"; irritable bowel syndrome; "migraine headaches (also claimed as sensitivity to light)"; and TBI "(also claimed as equilibrium issues and stuttering)."[68] The combinations covered all eight disabilities on the veteran's compensation application but only PTSD on his supplemental claim. The May 2021 decision explained that service connection was granted for PTSD because the records show that the veteran had earned a Combat Action Ribbon and had been diagnosed with PTSD. The decision specified that "[c]ompensation is not payable for this condition. (38 CFR 17.109)."[69] The explanation for the denials of service connection for each of the other four disabilities was that the records showed no complaint of or treatment for the disability during service.

The May 2021 decision was accompanied by a letter that said the rating decision explained the reasons for the RO's decision, and that the letter and rating decision constituted VA's decision

---

[63] *Harris v. McDonough*, 33 Vet.App. 269 (2021) (per curiam order).

[64] *See* discussion *ante* at p. 5.

[65] RCA Ex. B at 1-5 (VA Form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits).

[66] RCA Ex. B at 6-5 (VA Form 20-0995, Decision Review Request: Supplemental Claim).

[67] RCA Ex. D.

[68] *Id.* at 1.

[69] *Id.* at 6.

"based on [the veteran's] claim received on May 10, 2021" and "all claims [VA] understood to be specifically made, implied, or inferred in that claim."[70]

The cited regulation, 38 C.F.R. § 17.109, provides certain veterans with presumptive eligibility for medical benefits for psychosis and active mental illness other than psychosis; the regulation does not concern the character of a veteran's discharge.[71] The regulatory provision that applies to the veteran's status is not even in chapter 17 of the statute or the regulation; it is in 38 C.F.R. § 3.360. Section 3.360(a) provides as follows:

> The health-care and related benefits authorized by chapter 17 of title 38 U.S.C. shall be provided to certain former service persons with administrative discharges under other than honorable conditions for any disability incurred or aggravated during active military, naval, or air service in line of duty.[72]

The only mention of the veteran's discharge in the May 2021 decision and notice letter is the listing in the rating decision of "Certificate of Release or Discharge from Active Duty" among seven items of evidence—with no indication of the nature of the discharge or its import or effect.

## II. NOTICE

Notice is the linchpin of our nonadversarial, pro-claimant system for adjudicating veterans benefits.[73] "The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process."[74] Notice is a foundational requirement grounded in the Due Process Clause of the Fifth Amendment of the United States Constitution, which fully protects veterans' property interest in benefits.[75] Appropriate notice is "[a]n essential principle of procedural due process."[76]

Beyond their constitutional rights, veterans "have a right to fair process in the development and adjudication of their claims and appeals before VA."[77] Even "where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system."[78] The principle of fair process applies throughout the process of a veteran's case and requires VA to properly provide content-complying notice and an opportunity to respond.[79] Moreover, "[t]his Court's

---

[70] Pet. at Ex. H; RCA at Ex. D. RCA at Ex. D includes both the RO's notice letter and the RO's rating decision. Though the pages of exhibit D are not numbered, the notice letter is at pages 1-3, and the rating decision is at pages 4-6.

[71] *See* 38 C.F.R. § 17.109 (2023).

[72] 38 C.F.R. § 3.360(a) (2023).

[73] *See Bryant v. Wilkie*, 33 Vet.App. 43, 46 (2020); *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) (highlighting "the importance of systemic fairness" in the "uniquely pro-claimant" system for awarding veterans benefits).

[74] *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993).

[75] *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009).

[76] *Noah v. McDonald*, 28 Vet.App. 120, 129 (2016). Even rudimentary due process demands timely and adequate notice. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).

[77] *Bryant*, 33 Vet.App. at 46.

[78] *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) (quoting *Thurber*, 5 Vet.App. at 123).

[79] *Smith*, 32 Vet.App. at 337-38; *Pelegrini v. Principi*, 18 Vet.App. 112, 123 (2004).

11

caselaw requires us to ensure compliance with reasonable notice and fair process."[80] In my view, the majority opinion's application of the implicit denial construct in this case fails to fulfill the Court's obligation.

The implicit denial construct is not a hole in the notice requirement that "VA's nonadversarial claims system is predicated upon."[81] "[T]he implicit denial rule is, at bottom, a notice provision."[82] So implicit denial is acceptable only if the decision "provides sufficient notice to the claimant that the pending claim [not explicitly addressed] has been finally resolved."[83] As this Court has said, "the key to an implicit denial inquiry is whether there was notice to the claimant that the Secretary has acted on the claim."[84] The RO's May 2021 decision provided no such notice.

### III. THE AMA

To address the most obvious shortcoming first, it cannot seriously be argued that the RO's May 2021 decision complies with the AMA's expanded notice requirements—to the extent that the Secretary and my colleagues attribute a character of discharge determination to that decision. The AMA added a detailed, itemized list of requirements for each VA notice of a decision affecting the provision of benefits. To "'help veterans better understand VA's decisions on their claims' and 'help better inform the veteran's decision regarding whether to appeal VA's rating decision,'"[85] each notice of decision must include

(1) Identification of the issues adjudicated.
(2) A summary of the evidence considered by the Secretary.
(3) A summary of the applicable laws and regulations.
(4) Identification of findings favorable to the claimant.
(5) In the case of a denial, identification of elements not satisfied leading to the denial.
(6) An explanation of how to obtain or access evidence used in making the decision.
(7) If applicable, identification of the criteria that must be satisfied to grant service connection or the next higher level of compensation.[86]

This notice requirement applies to decisions by VA's ROs, such as the May 2021 decision at issue in this case.[87]

---

[80] *Roberts v. McDonald*, 27 Vet.App. 108, 111 (2014).

[81] *Thurber*, 5 Vet.App. at 123.

[82] *Adams v. Shinseki*, 568 F.3d 956, 965 (Fed. Cir. 2009).

[83] *Jones v. Shinseki*, 619 F.3d 1368, 1372 (Fed. Cir. 2010).

[84] *Locklear v Shinseki*, 24 Vet.App. 311, 314-15 (2011).

[85] *Greer v. McDonough*, 36 Vet.App. 220, 224 (2023) (quoting H.R. REP. NO. 115-135, at 3 (2017), as reprinted in 2017 U.S.C.C.A.N. 97, 99.).

[86] *Id.*; 38 U.S.C. § 5104(b).

[87] *See Greer*, 36 Vet.App. at 224 ("Congress explained that [the change to section 5104(b)] was intended to 'help veterans better understand VA's decisions on their claims' and 'to help better inform the veteran's decision regarding whether to appeal VA's rating decision.'" (quoting H.R. REP. NO. 115-135, at 3 (2017)), *Id.* at 227 ("In its discussion of the 'detailed decision notification letters' mandated by [the AMA], Congress clearly stated that '[t]he intent of this provision is to help better inform the veteran's decision regarding whether to appeal VA's rating decision.'" (quoting H.R. REP. NO. 115-135, at 3)); Pet. at Ex. H; RCA at Ex. D.

The statute does not prescribe the form for informing claimants of the section 5104(b) notice elements; "it only requires that those elements be clearly conveyed to claimants."[88] By regulation, the Secretary has added, as a procedural due process right, that the notice required by section 5104(b) must be provided to claimants in writing.[89] These statutory and regulatory requirements apply to Mr. Hamill's March 2021 claims and the RO's May 2021 decision adjudicating them.[90] Since the RO's decision does not address the character of the veteran's discharge at all, the decision falls woefully short of meeting the AMA's notice mandate. Neither the Secretary nor the majority opinion contends otherwise. The Secretary does not address the AMA's notice requirements at all. The majority opinion relies only on the coexistence of the implicit denial construct with the pre-AMA version of section 5104.[91] The silence and terseness are understandable.

Before the AMA, section 5104 required only a general notice with the RO's reason for its decision; the AMA's systemic overhaul added six specific notice elements that apply to all decisions.[92] The majority opinion summarizes circumstances that sometimes have sufficed for notice under the old rules. But no one has advanced a credible explanation of how a decision that does not even mention a claim can satisfy the specific statutory elements required by the AMA for notice to be sufficient. The Secretary's invocation of the implicit denial rule is incongruent with his prior assurances that (1) "[t]his new process will provide veterans with timely, fair, and high quality decisions"[93]; (2) all decision notices "must now include seven specified data elements," including a summary of the evidence considered, to ensure that claimants have "a clear understanding" of what was done[94]; (3) "[e]nhanced decision notices will allow claimants and their representatives to make more informed choices about whether to seek further review and, if so, which of the new review lanes best fits the claimant's needs"[95]; and (4) requiring the use of standard claims forms will enable VA "'to cut processing time in identifying and developing claims, which will result in faster delivery of benefits to all veterans.'"[96]

VA's recent emphasis on requiring claims to be explicitly spelled out on forms so they can be expressly addressed expeditiously, with any lingering issues repackaged in supplemental claims subject to the same requirements, goes hand in hand with VA's obligation to provide specific notice of the decision that resolves those issues. If the AMA's requirements are not enough, this is a poster case showing why the expansive view of the implicit denial construct adopted by the majority is unworkable. Sanctioning implicit denials of implicit claims relegates the real adjudicatory work to the shadows, with a loss of transparency that sows confusion among the parties and undermines confidence in the system.

---

[88] *Cowan v. McDonough*, 35 Vet.App. 232, 242 (2022).

[89] 38 C.F.R. § 3.103(f) (2019).

[90] *See Mattox v. McDonough*, 34 Vet.App. 61, 69 (2021) (holding that the AMA applies to an initial decision on a claim for which an administrative appeal is being processed has been issued on or after February 19, 2019), *aff'd*, 56 F.4th 1369 (Fed. Cir. 2023).

[91] *See* discussion *ante* at pp. 6-7.

[92] *Greer*, 36 Vet.App. at 224; *Cowan*, 35 Vet.App. at 239.

[93] VA Claims and Appeals Modernization, 83 Fed. Reg. 39,818, 39,819 (proposed Aug. 10, 2018).

[94] VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 141 (Jan. 18, 2019) (codified at 38 C.F.R. pts. 3, 8, 14, 19, 20, 21).

[95] VA Claims and Appeals Modernization, 83 Fed. Reg. at 39,820.

[96] *Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1351 (Fed. Cir. 2016) (quoting Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660, 57,661 (Sept. 25, 2014) (codified at 38 C.F.R. pts. 3, 19, 20)).

## IV. THE *INGRAM* STANDARD

This Court's admonition more than 16 years ago was prescient: "[A]ccepting a broadly interpreted doctrine of sub silentio denials has grave implications for due process and protecting the appellate rights of veterans."[97] The problem is most acute when the implicit denial is of an implied claim, as the *Ingram* Court highlighted.

> Treating the Secretary's failure to sympathetically read and adjudicate a reasonably raised claim as a pending claim benefits veterans because it protects their appellate rights and works no hardship on the Secretary in that it requires only that each claim be specifically addressed. If a veteran is aware of a particular benefit and makes an unambiguous claim for it, the Secretary's duty to sympathetically read [the veteran's] submissions is irrelevant. That duty primarily helps those veterans who have not clearly articulated that they are seeking a particular benefit. It is illogical to expect such veterans to immediately recognize when the Secretary has failed to adjudicate a reasonably raised claim because it is ignorance of the intricacies of potential claims that makes the duty necessary. Hence, if the law equates a VA failure to adjudicate a reasonably raised claim to a sub silentio denial of the claim, then it is unlikely that the veteran would have sufficient notice of the disposition of his claim to assert error on direct appeal.[98]

So the *Ingram* Court set a workable standard for the implicit denial of an implied, reasonably raised claim: "[W]here an RO decision discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected, then it constitutes a denial of that claim even if the formal adjudicative language does not 'specifically' deny that claim."[99] In this case, as in *Ingram*, there was no such denial.[100]

The majority rests its reliance on implicit denial on the *Cogburn* factors.[101] But the majority's analysis departs significantly from the Court's analysis in *Cogburn*. The veteran's two March 2021 claims for disability compensation are related in timing and content, and the RO's decision explicitly addresses 9 of the 14 disabilities claimed, but the nature of his discharge issue is different and was raised 4 and 7 years before. Most importantly, the RO's May 2021 decision completely fails the "specificity of the adjudication" test in that the decision does not allude to any discharge claim at all. The majority cannot identify even a hint in the May 2021 decision that the RO considered the veteran to have sought to reopen the RO's character of discharge decisions from 2014 and 2017, and denied that request. The majority's conclusory assertion that the RO's

---

[97] *Ingram v. Nicholson*, 21 Vet.App. 232, 254 (2007) (per curiam).

[98] *Id.* at 253.

[99] *Id.* at 255.

[100] The Federal Circuit cases the majority trumpets likewise require more than was afforded the veteran here, where there was nothing to indicate that the May 2021 decision considered evidence regarding the veteran's discharge or addressed the merits of that evidence. *See, e.g., Hampton v. McDonough*, 68 F.4th 1376, 1381 (Fed. Cir. 2023), *petition for cert. filed*, No. 23-543 (U.S. Nov. 21, 2023).

[101] *See Cogburn v. Shinseki*, 24 Vet.App. 205, 212-13 (2010), *aff'd after remand sub nom. Cogburn v. Gibson*, No. 12-3323, 2014 WL 2600052 (Vet. App. June 11, 2014) (mem. dec.), *aff'd sub nom. Cogburn v. McDonald*, 809 F.3d 1232 (Fed. Cir. 2016). To the extent that *Cogburn* rests on its indication that the non-adversarial, pro-claimant nature of the veterans benefits system leaves veterans with watered-down due process rights, *see id.* at 210, *Cogburn* has not stood the test of time. *See supra* at 11-12. Veterans are entitled to both constitutional due process and the fair process deeply rooted in the nature of the veterans benefits system. *Id.*

May 2021 decision specifically turns on an adverse character of discharge determination is mere speculation that the RO would, could, or should have decided on that basis. But such woulda-coulda-shoulda analysis is not what is required for veterans. They are entitled to notice in or with the RO's decision. Even if the implicit denial construct somehow survives the AMA's specific notice requirements, the reasonable notice of the implicit denial cannot be found in the RO's May 2021 decision. There is nothing in the May 2021 decision and notice letter that makes it clear to a reasonable person that the decision is intended to dispose of any renewed challenge by the veteran to his character of discharge.[102] That decision specifies the RO's reasons—Mr. Hamill is a combat veteran diagnosed with PTSD, but his records showed no complaint of or treatment for GERD, irritable bowel syndrome, migraine headaches, or TBI during service.[103] None of the reasons given relate to the veteran's character of discharge.

## V. THERE WAS NO IMPLICIT DENIAL REGARDING DISCHARGE

The history of this case demonstrates that there was no implicit denial in the May 2021 decision regarding the veteran's character of discharge. When he applied for disability compensation in April 2013,[104] VA responded (in September 2013) that the military said that his service was not honorable, so VA had to decide whether he was eligible for VA benefits.[105] In May 2014, VA explicitly decided that it considered the veteran's other than honorable discharge to be a bar to all VA benefits.[106]

The veteran applied for disability compensation again in May 2017.[107] VA specifically construed the veteran's application as a request to reopen the issue of the character of his discharge, and VA explicitly denied that request in July 2017.[108] VA's history of highlighting the veteran's character of discharge and explicitly deciding that issue as a condition precedent to his eligibility for disability compensation is incompatible with the Secretary's invocation of implicit denial now (and the Court's embrace of it). Since the RO had twice explicitly separated and addressed the character of the veteran's discharge as a prerequisite to adjudicating his disability compensation claims, a reasonable person would expect to see a specific decision about his character of discharge if that was being considered again.[109]

In this case, it is obvious from their conduct that neither the veteran nor the Secretary viewed the issue of the veteran's character of discharge determination to have been resolved by VA's May 2021 decision. In July 2022, the veteran asked VA to make a written decision regarding his character of discharge.[110] The RO responded in 6 days, mischaracterizing the veteran's letter

---

[102] *See, e.g.*, *Adams*, 568 F.3d at 964.

[103] RCA at Ex. D at 6-7.

[104] Pet. at Ex. B.

[105] Pet. at Ex. C.

[106] Pet. at Ex. D. Oddly, the May 2014 decision says both that the veteran "is entitled to health care under Chapter 17 of Title 38 U.S.C. for any disabilities determined to be service connected for [the] period of service from February 26, 2009 through March 15, 2013," *Id.* at 1, and that he "is not entitled to health care under Chapter 17 of Title 38 U.S.C. for any disabilities determined to be service connected for period of service from February 26, 2009 through March 15, 2013," *Id.* at 3.

[107] Pet. at Ex. E.

[108] Pet. at Ex. F.

[109] *See Locklear*, 24 Vet.App. at 316-18.

[110] Pet. at Ex. I.

15

as a "request to upgrade his DD 214."[111] The RO did not say that it had read the veteran's March 2021 disability claims as implicit requests to reopen the character of his discharge, nor did the RO say that it had implicitly decided such a request. The RO did not even indicate whether VA would act on the veteran's request for a decision. Instead, the RO stated that he "can also ask the Service Department to change the character of discharge or [the veteran] can apply for correction of military records."[112]

In December 2022, the veteran filed the petition at hand, asking the Court to order the Secretary "to make a character of service determination on the decision of the Supplemental Claim that rendered in May 2021."[113] The veteran asserted that VA had "refused to acknowledge, let alone adjudicate, [his character of discharge] claim on the merits despite having a statutory obligation to do so."[114] The veteran relied on *Harris*, which held that the veteran was "entitled to a writ compelling the Secretary to issue an appealable decision as to whether the evidence submitted since [his] COD determination is new and material with respect to whether his COD is a bar to VA benefits."[115]

As in July 2022, the Secretary did not respond by saying that the RO's May 2021 decision had addressed the veteran's character of discharge, implicitly or otherwise. Having been confronted with the *Harris* holding in the veteran's December 2022 petition, the RO did as *Harris* dictated. In February 2023, VA informed the veteran that it had "made a decision regarding [his] discharge from military service," deciding that "[t]here ha[d] been no new and relevant evidence submitted to reopen [his] claim for Character of Discharge determination," and that his military service was "dishonorable for VA purposes."[116] In the Secretary's July 2023 response to the veteran's class action request, the Secretary argued that VA's May 2021 decision "meets the criteria for an implicit denial as to [the veteran's COD determination]."[117] That is a post hoc rationalization the Court should not accept.[118]

## VI. THE VERERAN'S PETITION IS NOT MOOT

The only reasonable conclusion is that VA overlooked *Harris* in May 2021 (and in July 2022) and realized in December 2022, when the petition highlighted the *Harris* requirement, that the RO needed to issue a decision addressing whether the veteran had submitted new and relevant evidence warranting readjudication of his character of discharge determination.[119] On January 12, 2023, the veteran moved for an extension of time to file his request for class certification and class action. On February 21, 2023, the RO decided that the character of the veteran's discharge was

---

[111] Pet. at Ex. J.

[112] *Id.*

[113] Pet. at 10.

[114] *Id.*

[115] *Harris*, 33 Vet.App. at 273.

[116] Secretary's Response to Pet. at Attachment A.

[117] Secretary's Response to RCA at 5.

[118] *See In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("'[C]ourts may not accept appellate counsel's *post hoc* rationalization for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))); *Simmons v. Wilkie*, 30 Vet.App. 267, 277 (2018).

[119] *See Harris,* 33 Vet.App. at 276-77; 38 U.S.C. § 5108 (reflecting the AMA standard for readjudicating a claim). As previously noted, the RO had issued a benefits decision in May 2021 but had ignored any implied challenge to the character of discharge determination.

dishonorable. The Secretary filed the RO's February 2023 letter with his petition response on March 6, 2023.[120] The veteran filed his RCA the same day.

The veteran alleges that VA engages in a pattern of inaction on character of discharge claims.[121] His proposed class is comprised of claimants

> who are former service members with less than-honorable discharges who: i. applied for VA benefits and VA denied some or all benefits based on a COD determination, and that decision became final; ii. later filed for disability compensation, health care, pension benefits, or a character of service determination; iii. received a determination as to whether the veteran's condition is eligible for Chapter 17 healthcare; and iv. did not receive a decision as to whether there is new and material or new and relevant evidence to readjudicate the COD determination.[122]

The Secretary contends that the petition is moot,

and the veteran has not demonstrated that a class action is superior to a precedential decision, largely because "the purported class members have all received appealable decisions that implicitly denied their COD determinations."[123] The Secretary otherwise concedes that the purported class would meet the requirements set forth in U.S. VET. APP. R. 23(a).[124]

As the majority acknowledges, the picking off exception to mootness applies when claims are rendered transitory by the tactic of mooting petitions before judicial resolution.[125] "[C]lass actions . . . help prevent the VA from mooting claims scheduled for precedential review."[126] The picking off problem is a recurrent one.[127] In my view, the picking off exception applies here, so the veteran's RCA is not moot. The veteran's January 2023 motion for an extension of time made clear that he was seeking class certification and class action, and he was entitled to a fair opportunity to file his RCA with the Court.[128] His filing of the RCA on the same day that the RO issued its February 2023 letter was prompt enough to prevail over the pick off.

Though the veteran's RCA is not moot, and the implicit denial construct runs into both *Ingram* and *Harris*, those issues have received nearly all the attention in this case, and there is more to deciding whether a class should be certified. Before acting on the RCA, I would require

---

[120] Secretary's Response to Pet. at Attachment A.

[121] RCA at 2-3.

[122] RCA at 9.

[123] Secretary's Response to RCA at 12.

[124] *Id.* at 14.

[125] *See Godsey v. Wilkie*, 31 Vet.App. 207, 219 (2019) (per curiam order).

[126] *Monk v. Shulkin*, 855 F.3d 1312, 1321 (Fed. Cir. 2017), *class certification denied sub nom. Monk v. Wilkie*, 30 Vet.App. 167 (2018) (en banc order), *aff'd*, 978 F.3d 1273 (Fed. Cir. 2020).

[127] *See Godsey*, 31 Vet.App. at 219; *Monk*, 855 F.3d at 1321; *Kernz v. McDonough*, ___ Vet.App. ___, ___, No. 20-2365, 2023 WL 6459373, at *21 (Oct. 4, 2023) (en banc order) (Jaquith, J., dissenting) (decrying the Court's practice of empowering VA to manufacture mootness whenever VA fears an adverse precedential decision), *appeal docketed*, No. 24-1171 (Fed. Cir. Nov. 21, 2023).

[128] *See Richardson v. Bledsoe*, 829 F.3d 273, 286-88 (3d Cir. 2016).

further briefing and oral argument on the issues that remain, including granting the Secretary's request for an opportunity to provide a supplemental response on the merits of whether a writ of mandamus is warranted for the proposed class.[129]

## VII. CONCLUSION

In a system that is supposed to be nonadversarial and pro-claimant, notice is a primary foundational requirement that should not be neutralized so unstated claims can be denied in silence. Constitutional due process, systemic fair process, and the AMA require no less. If the implicit denial construct survives the AMA, it must only apply when the denial is evident in the decisional document. It is obvious from the course of this case that the parties saw no implicit denial in the RO's May 2021 decision—for good reason, as there was none to see. I respectfully dissent.

---

[129] Secretary's Response to RCA at 1 n.1.